3 Fed 897

[S. F. No. 342.    Department Two.—January 26, 1897.]

# PAUL TILLAUX, APPELLANT, *v.* CLARE H. TIL-LAUX, RESPONDENT.

HUSBAND AND WIFE — DEED TO WIFE — CONSIDERATION—AGREEMENT TO LIVE APART — BREACH OF CONTRACT — RESULTING TRUST. — A deed executed and delivered from a husband to his wife, conveying an absolute title in fee, with an expressed consideration of "love and affection," and "for her better maintenance and support," requires no other consideration to support it, and no trust results therefrom in favor of the husband for want or failure of consideration, notwithstanding there was a contemporaneous agreement of the parties to live apart and not to molest each other, and notwithstanding there was a failure of the parties to carry out such agreement, and an alleged breach of the wife's contract not to molest the husband.

ID.—VOLUNTARY CONVEYANCE — WANT OF CONSIDERATION — RESULTING TRUST.—In case of voluntary conveyance, mere want of consideration never raises a resulting trust to the donor, nor can such conveyance be revoked or set aside by him.

ID.—CONTRACTS BETWEEN HUSBAND AND WIFE—PRESUMPTION—UNDUE INFLUENCE—PRIMA FACIE EFFECT OF CONVEYANCE.—Under the law of California, the husband and wife may contract with each other as freely as if unmarried, and there is no presumption of undue influence in case of a conveyance from one to the other, but the deed *prima facie* conveys whatever its terms embrace.

ID.—ACTION TO COMPEL RECONVEYANCE—INSUFFICIENT COMPLAINT—INTENTION OF WIFE TO BREAK PROMISE—INCIDENT OF AGREED SEPARATION — CONSENT OF HUSBAND TO LIVE WITH WIFE. — The husband cannot, years after the execution and delivery of a voluntary conveyance to his wife, maintain an action to compel a reconveyance from her for alleged want and failure of consideration, connected with an alleged breach of the wife's promise not to molest the husband, made as part of an agreement for separation between them at the time of the conveyance, and an alleged intention on her part to break the promise when made; and a complaint stating such facts, and also showing that the parties did not in fact live separately for several years, states no ground upon which a reconveyance can be compelled, the alleged promise being merely incidental to the agreed separation, and such as the husband, by his consent not to live separately from the wife, gave her no opportunity to comply with; and the averment of original intention on her part to break the promise not to molest the husband after a separation is of no legal significance, there being no averment that she had no intention to perform the agreement of separation, or that she promised to live peaceably with the husband without a separation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    J. V. COFFEY, Judge.

115   663
a120 324
a120 325
115   663
122   427

115   663
126   192

115   663
134   173
134   606

115   663
135   317
135   318

115   663
d141 391

115   663
143   649

115   663
145   415

115   663
147   81

The facts are stated in the opinion of the court.

*Curtis Hillyer*, for Appellant.

There was no consideration for the transfer, because the agreement for separation was never carried into effect. (*Wells* v. *Stout*, 9 Cal. 498; *Garland* v. *Garland*, 50 Miss. 694; *Bateman* v. *Ross*, 1 Dow, 235; *Zimmer* v. *Settle*, 124 N. Y. 37; 21 Am. St. Rep. 638; *James* v. *James*, 81 Tex. 373; Civ. Code, secs. 159, 160.) It is no consideration for a person to promise to refrain from doing that which the law will forbid his doing, or to agree to do that which the law expressly requires that he shall do. (Clark on Contracts, sec. 79; Addison on Contracts, 4; 1 Parsons on Contracts, 437; *McCaleb* v. *Price*, 12 Ala. 753; *Botkin* v. *Livingston*, 21 Kan. 232; *Commonwealth* v. *Johnson*, 3 Cush. 454; *Callagan* v. *Hallett*, 1 Caines, 104; *Crosby* v. *Wood*, 6 N. Y. 369; *Robinson* v. *Jewett*, 116 N. Y. 40; *Tolhurst* v. *Powers*, 133 N. Y. 460; *Cleveland* v. *Lenze*, 27 Ohio St. 383; Anson on Contracts, 83.) Where one standing in a confidential relation toward another obtains an advantage of that person by means of promises, the subsequent failure of the promisor to fulfill the promises is *ipso facto* a fraud (*Jackson* v. *Jackson*, 94 Cal. 446, 461; Civ. Code, secs. 158, 2231, 2234, 2235; *Brison* v. *Brison*, 75 Cal. 525; 7 Am. St. Rep. 189; 90 Cal. 323; *Allore* v. *Jewell*, 94 U. S. 506; *Taylor* v. *Taylor*, 8 How. 184; *Moore* v. *Moore*, 56 Cal. 89; *Alaniz* v. *Cazenave*, 91 Cal. 41), and such fraud as entitles the promisee to demand the return of the property. (*Klose* v. *Hillenbrand*, 88 Cal. 473; *Wolverton* v. *Baker*, 86 Cal. 592; *Humphrey* v. *West*, 40 Mich. 597; *Bogie* v. *Bogie*, 41 Wis. 209; *Bresnahan* v. *Bresnahan*, 46 Wis. 385; *Reid* v. *Burns*, 13 Ohio St. 49; *Jenkins* v. *Jenkins*, 3 T. B. Mon. 327; *Scott* v. *Scott*, 3 B. Mon. 2; *Leach* v. *Leach*, 4 Ind. 628; 58 Am. Dec. 642; *Devereaux* v. *Cooper*, 11 Vt. 103.) When the transaction was abandoned a resulting trust was raised. (*Russ* v. *Mebius*, 16 Cal. 350; Story's Equity Jurisprudence, sec. 1200.) The law conclusively presumes confidence of the husband

and wife in each other to have existed. (*Dolliver* v. *Dolliver*, 94 Cal. 642.)

*Joseph K. Hawkins, Lennon & Hawkins,* and *Lloyd & Wood,* for Respondent.

The complaint does not state facts sufficient to constitute a cause of action. (*Barfield* v. *Price,* 40 Cal. 535; Civ. Code, secs. 1625, 1639, 3515, 3540; *Jungerman* v. *Bovee,* 19 Cal. 355; *Goldman* v. *Davis,* 23 Cal. 256; *Feeney* v. *Howard,* 79 Cal. 535; 12 Am. St. Rep. 162; *Brison* v. *Brison,* 90 Cal. 323.) If the relation of confidence has entirely ceased sufficiently to put the parties in complete independence of each other, and if thereupon a full and fair settlement of all transactions growing out of their relations has been made, there can be no objection to any bounty or grant conferred thereunder. (Story's Equity Jurisprudence, secs. 313, 317, 320, and cases cited; *Falk* v. *Turner,* 101 Mass. 496; Kerr on Fraud and Mistake, Bump's Am. ed., 151; *Soberanes* v. *Soberanes,* 97 Cal. 145, 146; *Carty* v. *Connolly,* 91 Cal. 22, 23; 2 Pomeroy's Equity Jurisprudence, sec. 928.) A mere breach of promise would not be sufficient to entitle the plaintiff to the relief asked for. (*Lawrence* **v.** *Gayetty,* 78 Cal. 126; *Hartman* v. *Reed,* 50 Cal. 485.)

McFarland, J.—A demurrer to the complaint was sustained and judgment rendered for defendant, and from the judgment plaintiff appeals.

On the fifteenth day of April, 1890, the plaintiff executed and delivered to defendant a deed conveying to her a certain described lot or parcel of land. It was duly acknowledged by plaintiff, and was, on said April 15th, duly recorded in the proper county. Upon its face the deed was an absolute conveyance to defendant of the title in fee to said land, without any reservation, condition, or limitation. It declared no trust and limited no use to any person other than the defendant herself. By the said deed the land was conveyed to defendant "and her heirs and assigns forever," together with all " appurtenances," etc., and "the reversion and reversions,

remainder and remainders, rents, issues, and profits thereof." The consideration expressed was " love and affection " for defendant, and also " for her better maintenance, support," etc. More than four years afterward, on June 19, 1894, this present action was commenced to procure a reconveyance of said land from defendant to plaintiff, and on May 4, 1895, there was filed a fourth amended complaint, which was somewhat different from the original, and to which the demurrer was sustained.

Counsel for respondent insist, among other things, that the demurrer was properly sustained because upon the face of the complaint the alleged cause of action is barred by the statute of limitations, because it is stale from laches, and because the complaint is fatally defective, on account of uncertainty; but we do not deem it necessary to determine these points, for the reason that, in our opinion, the complaint does not in other respects state facts sufficient to constitute a cause of action.

It is averred in the complaint, in addition to the facts above stated, that at the time of the execution of said deed, and " as a part of the same transaction," the parties executed a certain written agreement, marked " Exhibit A," set forth in the complaint. In this agreement it is first stated that the parties "finding that, by reason of domestic difficulties that have arisen between them, they cannot with their existing opinions live together, they do hereby promise and agree one with the other, in and for good and proper considerations flowing to each other, to live separate and apart *a mensa et thoro.*" It is then mutually covenanted that " they do hereby each of them agree not to molest or interfere with one or the other in or about the business or living of the other." It is then covenanted that the husband should have certain personal property and the wife certain other personal property. Then the plaintiff agrees to " give and convey " to the defendant the lot of land here in controversy; and at the same time he did

execute and deliver to defendant a deed of conveyance of said lot as hereinbefore mentioned. It is further covenanted as follows: "It is further agreed that the term of existence of these articles of separation, *so far as the same affects the living apart of the parties hereto,* shall be for such time as the parties hereto may mutually determine hereafter, *and for all other purposes for the period of the whole future.*" It is averred in the complaint that after the making and delivery of said agreement and deed "the plaintiff and defendant continued to live together," and that they did continue to live together continuously for nearly four years thereafter. It is further averred that before the execution of said deed the said parties had frequent quarrels, and that defendant had at divers times abused plaintiff and caused him grievous bodily and mental suffering; that after the execution of said deed, and while the parties were living together as aforesaid, the defendant "for a time"—no definite period being mentioned— "did cease to molest and abuse plaintiff, and did permit him to live in peace and quiet"; that "thereafter," defendant "recommenced her abuse of plaintiff," and by various acts, which are described, caused plaintiff great bodily and mental suffering; and that about the month of February, 1894, the plaintiff, on account of her abuse, left the defendant and has not since returned.

The main points made by appellant in support of the sufficiency of the complaint seem to be that there was no consideration for the deed; that if the promise of defendant not to molest plaintiff can be taken in any sense as a consideration, such consideration is void, because it was a mere agreement to do what the law expressly required her to do; and that, generally, the deed must be held void on account of the confidential relation of husband and wife that existed between the parties. We do not think that these positions are tenable.

A deed by the owner of land, duly signed and acknowledged by him and delivered to the grantee, conveying the land to the latter in fee simple, is one of the

most solemn of civil acts. It is not a thing to be played with, or reclaimed at pleasure, as a hawk in falconry. It is not void on account of either want or failure of consideration; nor does want or failure of consideration raise a resulting trust. Leading authorities declaring this principle are cited in the opinion of the supreme court of Michigan in *Jackson* v. *Cleveland,* 15 Mich. 94; 90 Am. Dec. 266. The court, among other things, say: "A voluntary deed, which purports to be for the beneficial use of the grantee, and which was made deliberately and without mistake or contrivance, *does not differ from any other deed in binding the grantor,* and can only be attacked by those having superior equities which the grantor had no right to cut off—as creditors and the like. . . . . This doctrine of resulting trusts has never been applied to mere voluntary conveyances. Mere want of consideration has never raised resulting trusts out of these." After alluding to the old common-law rule—that a feoffment without consideration was practically no conveyance, and explaining the technical ground upon which it rested, and showing that it did not obtain when any consideration was expressed, the court say: "A court of chancery has never ventured, against the expressed will of the donor appearing on the face of the deed, 'to take the use from the donee, and give it back to the donor.'" In Devlin on Deeds, section 1189, the author says: "It is now settled law that a trust does not result to the grantor merely because there was no consideration for the conveyance"; and he cites a multitude of authorities in support of the proposition—among others, *Burt* v. *Wilson,* 28 Cal. 632, 87 Am. Dec. 142, which is strongly in point. (See, particularly, *Young* v. *Peachy,* 2 Atk. 257; *Lloyd* v. *Spillet,* 2 Atk. 150; *Groff* v. *Rohrer,* 35 Md. 327, and cases there cited; *Sturtevant* v. *Sturtevant,* 20 N. Y. 39; 75 Am. Dec. 371; *Burt* v. *Wilson, supra;* Hill on Trustees, 106, et seq.) In Hill on Trustees, 107, the author says: "It may, therefore, be stated, as the clear result of the authorities, that when a person, being a

stranger in blood of the donor—and *a fortiori* if con-
nected with him by blood—is in possession of an estate
under a voluntary conveyance, *duly executed,* the mere
fact of his being a volunteer will not of itself create any
presumption that he is a trustee for the grantor; but
he will be considered entitled to the enjoyment of the
beneficial interest, unless that title be displaced by suffi-
cient evidence of an intention on the part of the donor
to create a trust; and, as was observed by the chancellor
in the case of *Cook* v. *Fountain,* 3 Swanst. 590, he need
not bring proofs to keep his estate, but the plaintiff
must bring proofs to take it away from him." And the
author further says: "But parol declarations cannot be
received with this object, for in these cases there exists
no resulting or presumptive trust, and the admission of
such evidence would be for the purpose of contradicting
the written instrument, and establishing a trust in the
very teeth of the statute of frauds." "The grantor can-
not claim that a trust results to himself, when he has
executed a deed without consideration." (Devlin on
Deeds, sec. 834.)

Therefore, in the case at bar, if it appeared from the
complaint that there was no consideration for the deed
in question, it would not for that reason be void, nor
would the want of consideration raise any resulting
trust. This is not an action to enforce an executory
contract; it is an action to set aside a completely ex-
ecuted conveyance of land which transferred the legal
and equitable title. As a matter of fact, however, the
deed expresses a full and meritorious consideration, viz.,
love and affection of a husband for a wife, and a purpose
to provide for her support and maintenance—a consider-
ation which, as was said in *Barker* v. *Koneman,* 13 Cal.
11, the law regards with favor, and supports even as
against subsequent creditors. Neither is there any such
difficulty here about direct conveyances between hus-
band and wife as existed at common law when they were
considered as one person, and a deed from one to the
other was void at law although it could be made effect-

ive in equity. They may have here any transactions with each other respecting property which either might have if unmarried. There is no necessity for the interposition of a third person as trustee.

Of course, a conveyance of land may be avoided when made or procured through accident, mistake, fraud, or undue influence, and the facts constituting any of such grounds of avoidance are fully alleged and clearly proven. In the case at bar, there is no pretense that the deed was executed through accident or mistake. The main contention of appellant really seems to be that undue influence must be presumed from the confidential relation of husband and wife; and that on account of such relation the deed must be held to be presumptively fraudulent. But such is not the law. Our code allows a husband and wife to deal freely with each other in all transactions touching property; and the proposition that, under our law, a conveyance from one to the other is *prima facie* void cannot be maintained. Of course, when in such a case facts are alleged upon which undue influence is asserted, they will be considered in view of the confidential relation; but to say that a deed of conveyance of land from a husband to a wife is on its face invalid would be to dispense with the statute, and go back to the rule of the common law. This question has frequently been raised, and determined adversely to appellant's contention, in contests of wills, where it has been attempted to upset wills of deceased husbands on account of the alleged undue influence of their wives; and it has been settled in such cases that the mere fact of the marriage relation was not sufficient to sustain the charge of undue influence, and that " there is no legal presumption against the validity of any provision which a husband may make in a wife's favor." (See *In re Langford*, 108 Cal. 622, 623, and cases there cited.) And there is no reason why the principle should not apply more strongly to deeds. With respect to deeds, while they have frequently been attacked on the ground of intent to defraud creditors, we do not recall a case

where there has ever been a contention by creditors that a deed was *prima facie* void merely because executed by a husband to a wife. At common law, deeds between husbands and wives were void; but courts of equity enforced them. These courts, at first, looked closely into the transaction, and exercised their discretion to refuse aid when the circumstances showed unfairness. However, they always enforced them when they were for the benefit of the wife and no rights of creditors intervened; and they finally came to hold that all deeds which would be good *in law,* if made to a third party, were good *in equity,* if made by a husband to a wife. (See *Sims* v. *Rickets,* 35 Ind. 181, 9 Am. Rep. 679, where the authorities on the subject are elaborately reviewed.) But here the subject does not present itself in the shape of ascertaining how far a court of equity should lend its aid to enforce a deed void at law, and, therefore, many of the earlier decisions on the point are now of no value; for here the old common-law rule has been abrogated, and a deed from a husband to his wife needs no decree of a court of equity to make it effective. If sufficient in form, it carries the full legal and equitable title to the land described in it to the grantee, who needs no chancellor to re-create it. She can safely defend it in a court of law. In this state a conveyance from husband to wife has been frequently sustained; and, although the attacks were generally by creditors, yet it must necessarily have been held in those cases that such conveyance was not *prima facie* void on account of the marriage relation; and some of the cases were direct attacks by the husband or his grantee. (*Emmons* v. *Barton,* 109 Cal. 662; *Carter* v. *McQuade,* 83 Cal. 274; *Taylor* v. *Opperman,* 79 Cal. 468; *Burkett* v. *Burkett,* 78 Cal. 310; 12 Am. St. Rep. 58; *Dow* v. *Gould etc. Co.,* 31 Cal. 653; *Barker* v. *Koneman, supra; Kohnes* v. *Ashenauer,* 17 Cal. 579.) In *Emmons* v. *Barton, supra,* where a deed from husband to wife was attacked, the court said: "A voluntary conveyance is not *prima facie* fraudulent, and a fraudulent intent is not

to be arrived at as a presumption of law." In *Taylor* v. *Opperman, supra,* the court said, quoting from a text-writer, that "the *prima facie* presumption arising from a deed of the husband to the wife of community real property is, that it was intended to change its character from community property to separate property of the wife." And in *Carter* v. *McQuade, supra,* the court said as follows: "In this state either husband or wife may enter into any engagement or transaction with the other respecting property which they might if unmarried. (Civ. Code, sec. 158.) A husband may convey real or personal property to his wife, and, whether the property conveyed be his separate property or community property, the presumption is that it thereby becomes, and is thereafter to be treated as, her separate property." The case of *Burkett* v. *Burkett, supra,* is strictly in point; for in that case the husband, having conveyed the land in question to his wife, undertook himself afterward to get it back; and he relied also upon the fact that the land was a homestead, and, therefore, could not be conveyed by the husband to the wife. But this court held that, although the homestead character of the land may not have been affected by the deed, yet the legal title to the land passed to the wife, and the husband could not have it declared to be in him. The court, among other things, say: "In this state either husband or wife may enter into any agreement or transaction with the other respecting property which either might if unmarried. Therefore, a husband may convey his real estate directly to his wife, as he may to any other person." And the court say further: "We see no just reason for permitting the husband to *question his own conveyance* of the property, and, as no one else is complaining, or could be injured thereby, the same must be upheld." And, in response to the point that the transaction was a gift, and, being incomplete, could not be enforced, the court said: "If the gift were not perfectly executed, and this were an attempt to compel a specific performance, the rule invoked would

be applicable.   But, as we have held that *the execution* of the conveyance was perfect without the signature and acknowledgment of the wife, and the action is by the grantor to avoid the same, the point is not well made." By the foregoing authorities, and others not here collated, the principle is clearly declared that the marriage relation does not, *ipso facto*, raise the presumption that a deed of conveyance from the husband to the wife has been the result of undue influence; but that such deed, *prima facie*, conveys to the wife whatever, according to rules of conveyancing, its terms embrace.   We have discussed the subject at some length, because an expression or two in one or two former opinions give some faint color, scarcely visible, to a different doctrine.

Appellant contends that there are facts averred in the case at bar which, viewed in the light of the marriage relation, are sufficient to make the deed in question invalid; and the case of *Brison* v. *Brison*, 90 Cal. 323, also 75 Cal. 525, 7 Am. St. Rep. 189, is cited in support of the contention.   The facts in that case were very peculiar, and presented an instance of a wife violating an express promise made by her to a husband, upon which he had the right to implicitly rely, not only on account of the legal confidential relation between them, but also on account of the actual confidence which he had in her, as the relation between them had always been most affectionate and confiding.   The husband was about to go from California to another country where he apprehended danger to his person; and, being solicitous that in case of his death his wife might have his property without the delay of administration, was advised by an attorney that the best way to accomplish that result was to convey his land to his wife absolutely, "if you have implicit confidence that your wife will deed it back to you."   He replied: "If I could not have confidence in my wife, who in the world could I have confidence in?   Certainly, I have the utmost confidence in her." Thereupon he made his wishes known to his wife and explained the situation to her, and she expressly prom-

ised to reconvey the land to him when he returned. Under these circumstances he conveyed the land to her; but upon his return she refused to reconvey; and an action by the husband against the wife for a reconveyance was sustained. The action was sustained, however, not upon the mere ground of the marriage relation between the parties, but because the wife had *violated the confidence* reposed in her by the husband. This court said (*Brison* v. *Brison,* 90 Cal. 330): "The relation of husband and wife between the parties is admitted, and also that the plaintiff had at all times confidence in his wife and in her devotion and fidelity to him, and that he made the deed to her relying upon that confidence. Upon these allegations this court said upon a former appeal (*Brison* v. *Brison,* 75 Cal. 529; 7 Am. St. Rep. 189): 'The relation of the parties therefore was confidential in fact as well as in law. The plaintiff was induced to make the deed by the confidence which he had in his wife, and the belief thereby engendered that she would perform her promise. But for that he would not have made it. The *betrayal of such confidence* is constructively fraudulent, and gives rise to a constructive fraud.'" Again, the court say (*Brison* v. *Brison,* 90 Cal. 333, 334) that the husband "was induced to make and did make a deed absolute in form of said land to the defendant, instead of making said will, with this *distinct understanding* between them, that if he should return from Arizona the defendant *would convey back to him the said land.*" There, then, were facts which would warrant a court in stretching to its utmost tension the doctrine that an absolute conveyance from the husband to the wife may be invalidated on account of the breach of the wife of a parol promise upon which the husband, owing to the legal and actual confidence which he reposed in her, had the right to rely. However, *Warnock* v. *Harlow,* 96 Cal. 298, 31 Am. St. Rep. 209, was a supplement to *Brison* v. *Brison, supra.* That action presented a contest between Harlow, a grantee of the wife, Mrs. Brison, and Catlin,

grantee of the husband, Mr. Brison; and the court there held that "the deed made in 1881 by W. W. Brison to his wife undoubtedly vested in her the legal title to the land"; that the judgment in *Brison* v. *Brison, supra,* did not affect Harlow, because he had received his deed before the commencement of the action; that "assuming that Mrs. Brison was a trustee for the benefit of her husband, that trust not appearing upon the deed which conveyed to her the legal title, it does not follow that her grantee did not take the property discharged of the trust"; and that "if the deeds of the respective parties were put in evidence, without anything more, appellant's [Harlow's] title must have prevailed, and hence the burden was upon respondent [Catlin] to allege and prove *some fact* that would qualify or invalidate appellant's title." Of course, if the deed from Brison to his wife had been *prima facie* void on account of presumed undue influence based on the marriage relation, there would have been no need of proof of "some fact" to invalidate it.

But the facts in *Brison* v. *Brison, supra,* were very different from those in the case at bar. We may waive consideration of the fact that while appellant avers, generally, that he had confidence in his wife, he shows specifically that he had not. There is no pretense here that the deed was made, as in the Brison case, upon the promise of the wife to reconvey to the husband. On the contrary, it is shown that the conveyance was to be "for the period of the whole future." After the conveyance, she continued to hold the land for several years with the knowledge of the husband; and there was no condition subsequent. The alleged promise of the respondent, "not to molest or interfere" with him "in or about the business or living" of appellant, was, in the first place, of no legal consequence, as a mere general promise of a wife; and, in the second place, it was clearly incidental to a separation, and might, perhaps, have some legal value as a part of a contract for separation. But there was no separation until shortly

before the commencement of this action; and if appellant did not choose to live separately, as he had a right to do under the articles of separation, he cannot complain that the respondent failed to fulfill a promise which he gave her no opportunity to comply with. Viewed in the light of the other facts shown by the complaint, no importance attaches to the general averment that respondent made certain promises without the intention of fulfilling them. This averment refers exclusively to her alleged promises not to molest appellant and to let him live in peace and quiet; but, as before stated, these promises, if they can be regarded at all, are to be considered as incidental and referable to a condition of separation. There is no averment that she had no intention to perform the agreement of separation, or that she promised to live peaceably *with* appellant in the usual affectionate relation of husband and wife; and as by the consent and act of appellant himself the separation did not take place, the averment that she never had an intention of doing something which he gave her no opportunity to do must be taken as a mere meaningless assertion of no legal value.

We think that the demurrer was properly sustained; for upon the averments of the complaint we see no reason why the appellant should be allowed to repudiate, years after its execution, his own solemn deed.

The judgment is affirmed.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.