[L. A. No. 5754. In Bank.—June 30, 1921.]

## CLARA MILLER, Appellant, v. ADOLPH BRODE, Respondent.

[1] HUSBAND AND WIFE—ACQUISITION OF REAL PROPERTY—DEED TO WIFE AS SEPARATE PROPERTY—CONSENT OF HUSBAND—WIFE'S SEPARATE PROPERTY.—Where the deed by which a ranch was acquired conveyed it to the wife as sole grantee, and described it as her separate property, and was so made with the consent of the husband, who participated in the transaction, the character of the property was definitely established as her separate property.

[2] ID.—CONSIDERATION.—Where real property is conveyed to the wife with the husband's consent by a deed expressly describing it as her separate property, it is immaterial that the consideration given for it is community property, since such a conveyance is an express gift by the husband to the wife of community property.

[3] ID.—EVIDENCE—INTENT OF HUSBAND IMMATERIAL.—Except for the purpose of showing fraud or some other ground for setting aside a transaction whereby a husband permitted real property to be conveyed to his wife as her separate property, evidence that the husband did not intend that the property should become the wife's separate property is wholly inconsequential, since such evidence is but a denial of his intent as expressed in the deed, and such expression is final.

[4] ID.—PURCHASE WITH SEPARATE AND COMMUNITY FUNDS—CONVEYANCE IN NAMES OF HUSBAND AND WIFE—CHARACTER OF OWNERSHIP.—Where real property was purchased partly with separate funds of the wife and partly wtih community funds, and was taken in the names of both husband and wife, the one-half interest which the conveyance on its face operated to convey to the wife

was taken and held by her as her separate estate, and the other half was taken and held by the husband as community property.

[5] ID.—MUTUAL DEEDS OF HUSBAND AND WIFE—OPERATIVE EFFECT UPON SURVIVORSHIP—INEFFECTIVE TRANSACTION.—Where a husband and wife, some time before the latter's death, each executed a deed to the other and placed it in their safe deposit box upon the understanding that upon the death of one the survivor would take all the property by the deed of the one dying, and the deed of the survivor would not take effect, the transaction was wholly ineffective.

[6] ID.—RELEASE OF INTEREST IN WIFE'S ESTATE—UNTRUE STATEMENT BY HUSBAND—AVOIDANCE BY DAUGHTER OF DECEASED.—Where, on the death of a wife, the daughter of the deceased by a former marriage was advised by the surviving husband that her mother left no estate because she had given him a deed of all her property, and the daughter in reliance upon such statement executed a release to him of all her interest in her mother's estate, and such statement was not true, she is entitled to have the release set aside, regardless of whether the husband knew the statement was false or believed it to be true.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Reversed.

The facts are stated in the opinion of the court.

Ernest E. Nichols and Ray W. Bruce for Appellant.

Muhleman & Crump for Respondent.

OLNEY, J.—From a judgment against her in an action to quiet title to an undivided one-half interest in certain real property, the plaintiff appeals.

The defendant is the surviving husband of one Eva Brode, deceased, and the plaintiff is Eva Brode's daughter by a former marriage. Eva Brode died intestate, leaving as her heirs only the plaintiff and the defendant. Her estate apparently was not administered upon. At the time of her death the record title to the property, which is the subject of the action, stood in the name of herself and her husband as tenants in common, having been conveyed by deed to them as joint grantees. The plaintiff claims that the property was in fact the separate property of her mother, so that she as her heir is the owner of a one-half interest therein. The defendant, on the other hand, claims

that it was all community property, so that upon his wife's death he became the absolute owner. The issue so presented is the primary issue in the case.

There is also a secondary issue turning on the validity or invalidity of a release of all her interest in her mother's estate given by the plaintiff to the defendant shortly after her mother's death. The plaintiff claims that this release is invalid for fraud and want of consideration.

The court found against the plaintiff upon both issues, and the sufficiency of the evidence to sustain the findings is questioned.

[1] The property in controversy was acquired by the decedent and her husband during marriage in trade for a ranch known as Lugo ranch. This ranch had been acquired shortly after the decedent's marriage to the defendant, and most, if not all, of the consideration given for it was property owned by her before marriage and unquestionably her separate property. The testimony of the defendant is not entirely clear, but, according to it, some, apparently, of the consideration was furnished by him. But however this may be, the deed by which the ranch was acquired conveyed it to the decedent as sole grantee, and described it as her separate property, and was so made with the consent of her husband, who participated in the transaction. This definitely establishes the character of the property as her separate property. In *McComb* v. *Spangler*, 71 Cal. 418, [12 Pac. 347], it was held that where a third person conveys property to a wife as her separate property, there is but a *prima facie* presumption that it is taken by her as such. This may be true where, as in that case, it does not appear that the deed was made with the husband's consent. [2] But where, although the property is purchased with community funds, it is conveyed to the wife with the husband's consent by a deed expressly describing it as her separate estate, it is as if the husband himself had conveyed community property to her by deed expressing that she took it as her separate estate. Such a conveyance would be nothing more nor less than an express gift by the husband to the wife of community property. (*Swain* v. *Duane*, 48 Cal. 358; *Shanahan* v. *Crampton*, 92 Cal. 9, [28 Pac. 50].) There is no impediment to a husband making such a gift if he desires, and if he does it

the property at once becomes the wife's separate property, and the effect of the conveyance in this respect cannot be avoided except by avoiding the conveyance itself. This, of course, cannot be done except for fraud, mistake, or some similar ground. In the absence of some such ground for setting aside the transaction it is wholly immaterial that the property was community property before the husband conveyed it to the wife, or in case it were conveyed to her by a third person that the consideration given for it· was community property. Its character is changed at once by the conveyance to the wife as her separate property either by the husband directly or by a third person with his consent. [3] Furthermore, except for the purpose of showing fraud or some other ground for setting aside the transaction, evidence that the husband did not intend that the property should become the wife's separate property is wholly inconsequential, since such evidence is but a denial of his intent as expressed in the deed, and that expression of intent is final. Such evidence, in fact, is nothing less than an attempt to avoid the legal consequences of what the husband actually did, but without setting aside what he did. As long as what he did stands, its legal consequences stand with it. In the present case no element of fraud or other ground for setting aside the act of the defendant in permitting the Lugo ranch to be conveyed to his wife as her separate property appears or is claimed, and it must therefore be taken that the decedent acquired and held the ranch as her separate property.

We have stated that the property in controversy was acquired by exchange for the Lugo ranch. If this were all, the conclusion would be inevitable, from the fact that the latter was the decedent's separate property, that the former was such also. But the question is complicated by two additional circumstances. One is that with the consent of the decedent it was taken, not in her name alone, but in the name of herself and her husband, and the other is that the Lugo ranch was not the entire consideration given. A part of the consideration was the assumption of a mortgage on the property for three thousand six hundred dollars, and this was paid off with funds from the joint bank account of the decedent and her husband. Into this bank account went funds which were undoubtedly separate funds of the dece-

dent and also funds of her husband. The deposit card, signed by both the parties and given to the bank when the account was opened, specifies that the account is opened and held by the depositors in joint ownership, with full right of survivorship. The defendant also testified that such was the understanding in regard to the account between himself and his wife. It is true that withdrawals from this account for the purpose of making payments on the mortgage followed closely in nearly every instance, if not in all, the deposit in the account of moneys which the decedent had received from an inheritance and were, therefore, her separate property. But even so, we do not see our way clear to hold that the implied finding of the trial court that this account and the moneys withdrawn from it and used to pay the mortgage mentioned were community property is not sustained by the evidence. The wife's separate funds were mingled in the account with community property and possibly with separate property of the husband. The evidence justifies the conclusion that the parties looked upon the account as a common one. The inference cannot unfairly be drawn that they considered it as a community account. If they did, and the decedent chose to deposit her separate funds in it, those funds took the character of the account. The case is quite different from *Denigan* v. *Hibernia etc. Society,* 127 Cal. 137, [59 Pac. 389], where an account in the joint names of a husband and wife was held to be the separate property of the latter, it appearing that it was made up exclusively of her funds, and that there was no evidence whatever of any understanding that the account itself was not her separate property other than the fact that it was in the joint names of herself and her husband. In view, then, of the implied finding of the court, it must be taken that the mortgage on the property in controversy, which was assumed as part of the consideration given for it, was paid off with community funds; in other words, that the property was acquired in part with community funds.

[4] The final situation, then, is that the real estate in controversy was purchased partly with separate funds or estate of the decedent and partly with community funds and was taken in the name of both the decedent and her husband. We can see but one conclusion that can be ration-

ally drawn from these facts, and that is that the one-half interest which the conveyance on its face operated to convey to the decedent was taken and held by her as her separate estate, and that the other half was taken and held by her husband as community property. Such was the presumption on the face of the deed (Civ. Code, sec. 164; *Pabst* v. *Shearer*, 172 Cal. 239, [156 Pac. 466]), and assuming, as we must in view of the finding of the court, that the funds taken from the joint bank account to pay off the mortgage assumed as part of the purchase price were community funds, the presumption is borne out rather than contradicted by the evidence. Plaintiff's counsel claim that even the one-half interest appearing in the defendant on the face of the deed must be taken to have been the decedent's separate estate, relying in support of their position upon *Shaw* v. *Bernal*, 163 Cal. 262, [124 Pac. 1012]. But in that case the property was purchased entirely with separate funds of the wife, and there were circumstances justifying the conclusion that the husband took the title as trustee for her. Nothing of this sort appears here. The finding of the trial court, then, that the property was entirely community property is supported by the evidence as to the one-half interest acquired in the name of the defendant, and is not supported by the evidence as to the other half acquired in the name of the plaintiff's mother. On the contrary, the evidence shows affirmatively and unmistakably that this latter half was separate property.

The conclusion so reached necessitates a consideration of the second issue in the case, that as to the validity of the release given the defendant by the plaintiff of all her interest in her mother's estate. The release was executed shortly after the decedent's death, and states that in consideration fo ten dollars paid her the plaintiff releases all claim in any estate of her mother. The actual fact of the matter is also, according to the defendant's own testimony, that the plaintiff received at the time but ten dollars. The defendant had previously given her $125, but apparently by way of gift. But whether the consideration was but the ten dollars or was the ten dollars plus the $125 previously given, it is perfectly evident that it was practically no consideration at all, if the plaintiff and defendant were aware of the fact that as her mother's heir she was the owner of

at least one-half interest in the one-half of the property which stood in her mother's name. Assuming the defendant's story as to the consideration given to be correct, the transaction is yet explainable as a rational transaction only upon one or the other of three possibilities—either that the release was really intended as a gift, or that there was a dispute or question between the parties as to their respective rights which the plaintiff was willing to settle for a nominal consideration, or that it was made upon the supposition that the plaintiff had no rights in any of the property which formerly belonged to her mother and the release was given merely by way of confirmation of the defendant's rights. The possibility that the release was intended as a gift is negatived by all the evidence and no claim is made by the defendant that the release was so intended. As to the second possibility, it would, of course, be extremely unlikely that if there had been any serious question as to the plaintiff having a substantial interest in the property she would be willing to forego that possible interest for a nominal consideration of ten dollars or, at most, $135. But however this may be, the evidence of the defendant himself shows that the third possibility is the true explanation of the giving of the release, and that it was given upon the supposition that the plaintiff had no interest in any property of her mother, but that the defendant had acquired it all.

[5] It seems that the defendant and the decedent, some time before the latter's death, had each executed a deed to the other and placed it in their safe deposit box upon the understanding that upon the death of one the survivor would take all the property by the deed of the one dying, and the deed of the survivor would not take effect. The transaction, in other words, was exactly that passed upon in *Kenney* v. *Parks*, 125 Cal. 146, [57 Pac. 772], and there held wholly ineffective. Upon the death of his wife, the defendant the next day obtained the deed by her and had it recorded. Thereafter, according to the defendant's testimony, the plaintiff asked him if her mother had left a will, and he replied "No," and that she had given him a deed to her property and did not leave any property. Several days later the plaintiff and defendant had a further conversation in which the defendant again made practically the same statement and asked the plaintiff to sign an agree-

ment in order that he might have no difficulty with his title. This she agreed to do, and the release was executed in accordance with the understanding so arrived at. It is plain enough from these facts, which appear from the testimony of the defendant himself, that the release was given in reliance upon his statement that the plaintiff's mother had conveyed all her property to him and left nothing as a part of her estate.

The plaintiff's account of the giving of the release is different from that of the defendant. It is that the ten dollars or the $135 which she received for it, as the case may be, was not the sole or even the moving consideration. The moving consideration, according to her statement, was the execution by the defendant of deeds in the plaintiff's favor to be delivered to her upon his death in case he died before her. Such deeds were executed, that is, executed in the sense that they were signed and acknowledged by the defendant. They were not delivered, however, and were subsequently destroyed by the defendant. The deeds were, of course, wholly invalid for want of a delivery, and if they were in fact the moving consideration for the plaintiff's release, there was such a failure of consideration for the release as would invalidate it.

The defendant denies that the deeds just mentioned were executed as the consideration for the release, and in view of the findings of the court we must take it that they were not. But if they were not, then the sole consideration for the release was either ten dollars or $135, as testified to by the defendant, and the only rational explanation of the transaction which can be discerned from the evidence is, as we have said, that the release was given in reliance upon the defendant's statement that the plaintiff's mother had conveyed all her property to him and had left no estate.

[6] This statement, in view of the findings against fraud, we must take to have been made by the defendant honestly and in the belief that it was true. But even so, the release was invalid. The statement was not true, and it went to a fact which in the very nature of things must have been the basis of the transaction between the parties. If the defendant knew the statement was false, there was gross fraud. If he believed it to be true, there was yet a mistake concurred in by him as well as by the plaintiff

and affecting the fundamental basis upon which they were dealing. Such a mistake invalidates a transaction into which it enters, and the plaintiff was entitled to have the release set aside. (Civ. Code, sec. 1567 et seq.) It follows that upon the merits of the case, construing the evidence in the light most favorable to the defendant, the plaintiff was yet the owner of one-half of the one-half interest which stood in her mother's name, and should have had judgment so declaring.

There is, however, a difficulty in reversing the judgment against her. It arises upon the pleadings. The plaintiff's complaint does not allege mistake; it does not even allege that the release was given in reliance upon the untrue statement of the defendant—either honestly or dishonestly made—that the decedent had conveyed her property to him and left nothing. It alleges fraud and want of consideration, but the facts alleged as sustaining these allegations are that the release was given in consideration of the defendant's promise to execute deeds which would give the property to the plaintiff upon his death, and that this promise was both fraudulent and had been repudiated. These allegations were denied by the defendant's answer, and the court must be taken to have found them to be untrue. In other words, the situation is one wherein the plaintiff sought to set aside the release because of certain facts alleged by her to exist, where the defendant denied the existence of those facts, where the parties went to trial and the court found that the facts alleged by the plaintiff did not exist, but where the only evidence that they did not exist is the testimony of the defendant which, while it showed a different state of facts from that alleged by the plaintiff, yet showed one upon which she was entitled to exactly the same relief. If plaintiff's counsel, after the defendant testified, had asked leave to amend their pleadings by adding allegations in conformity with the defendant's story, they would have been entitled to it, and had it been refused, there would be no difficulty in reversing the judgment. But this they did not do, and the result is that the complaint does not allege the facts upon which, and upon which alone in view of the court's findings, she may set aside her release and have relief. On the other hand, the case was manifestly tried by both sides and determined by the court upon the

186 Cal.—27

theory that there was a direct conflict between the stories of the plaintiff and the defendant—as there was—and according as this conflict was determined judgment should be given—as was not the case. It is also to be said that the court's findings of want of fraud must have been based in large part upon its erroneous finding that none of the property was the separate property of the plaintiff's mother. If it had not been for this erroneous conclusion as to the character of the property, the issue as to the defendant's fraud in securing the release and the evidence bearing upon that issue would have presented themselves to the court in a very different aspect, and the findings as to want of fraud might have been quite different. There was little ground for questioning the release if the property were community property and the plaintiff had no interest in it. There was strong ground for questioning it if it were her mother's separate property and she had an interest in it, ground so strong that it is hardly possible that the release would have been valid. We think it quite evident that the erroneous finding of the court that the property was community property was, in the final analysis of the case, the real foundation for the judgment against the plaintiff, and in fact the only foundation for it, and that because of it the judgment should be reversed.

Judgment reversed with leave to the parties to amend their pleadings if they so desire.

Shaw, J., Wilbur, J., Sloane, J., Lennon, J., Angellotti, C. J., and Lawlor, J., concurred.