[Civ. No. 6059. First Appellate District, Division Two.—December 8, 1927.]

OTTO A. DALE, Respondent, v. IDA DALE, Appellant.

H. C. Nelson and J. F. Coonan for Appellant.

Metzler & Mitchell for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from that portion of an interlocutory judgment of divorce which holds that sixty acres of land in Humboldt County, and certain personal property, which was conveyed from a husband to his wife "as her separate property," was in fact community property.

Appellant and respondent intermarried at Eureka, September 8, 1904, and lived together as husband and wife until April, 1924. The respondent, on October 23, 1918, executed and delivered to appellant a deed of conveyance of sixty acres of land, and a bill of sale of certain personal property, which are involved in this appeal. The *habendum* clause of this deed recited that said land was conveyed "unto the party of the second part, and her heirs and assigns forever, *as and for her separate property*." A similar phrase was incorporated in the bill of sale. Domestic trouble arose between the parties. April 29, 1924, respondent commenced an action for divorce on the ground of extreme cruelty, and alleged that said land was conveyed to appellant to be held by her in trust as community property; that she had made false and unjust accusations against respondent, and that she feared he might dispose of their property to her detriment. It was then alleged that these conveyances of property were made to appellant to induce her to refrain from such treatment and false accusations, and to assure her that the property would not be disposed of without her knowledge and signature. In an amended complaint the respondent further alleged that he was unable

to speak or understand the English language well; that neither the deed nor the bill of sale was read or explained to respondent, and that he did not know that either of the instruments purported to convey to the appellant the absolute title as her separate property. An answer was filed specifically denying all of the allegations of the complaint, and affirmatively alleging that the land and personal property involved were conveyed to appellant as her separate property, and that the action, so far as it related to the real property, was barred by the provisions of section 318 of the Code of Civil Procedure, and by the provisions of sections 337, 338, and 343 of the Code of Civil Procedure. A cross-complaint was also filed in behalf of appellant. Upon respondent's motion, after the case had been tried and submitted for decision, the submission was set aside, and the respondent was permitted to file an amended complaint, which added little of importance, except the allegation that "the said parties did not know that the phrase 'as and for her separate property,' had been written into the deed and bill of sale, by the scrivener, together with the further allegation that neither the deed nor the bill of sale had been read to the parties or explained, before their execution." Further evidence was then adduced, and subsequently the court rendered an interlocutory judgment of divorce in favor of respondent, on the ground of extreme cruelty, and awarded to him the custody of the two minor children. It was also decreed that all of the real and personal property in question was community property, and reformation of both instruments was ordered by eliminating therefrom the clause "as and for her separate property," and a division of all this property between the respective parties was decreed share and share alike.

Appellant contends that (1) the property described in the deed and bill of sale were conclusively presumed to be her separate property; (2) that the action to recover the real property was barred by the statute of limitations; (3) that the findings of court, to the effect that the real and personal property described in the deed and bill of sale were community property, is not supported by the evidence, and (4) that the court abused its discretion in permitting the amendment of the complaint after the case was submitted for decision.

██ Where property is conveyed from a husband to his wife, with intent to make it her separate property, even though it were purchased from the community funds, conveyance operates as a gift from the husband, and the wife takes it as her separate property. (Civ. Code, sec. 164; 13 Cal. Jur. 852, sec. 50; 5 R. C. L. 846, sec. 26; *Alferitz* v. *Arrivillaga*, 143 Cal. 646 [77 Pac. 657].) The intention with which the conveyance is made must be determined from the language of the instrument together with all the facts, circumstances, and declaration of the parties disclosed by the evidence as occurring at the time of the transaction. (*Gilmour* v. *North Pasadena Land & W. Co.*, 178 Cal. 6 [171 Pac. 1066] ; *Fanning* v. *Green*, 156 Cal. 279 [104 Pac. 308] ; *Cohn* v. *Smith*, 37 Cal. App. 764 [174 Pac. 682].) [2] Where a deed is executed from a husband to his wife, and it contains the specific declaration that the land is conveyed as. her separate property, this recital is strong evidence of his intention to relinquish his claim upon it as community property, and this presumption can only be rebutted by satisfactory evidence that this form of conveyance was procured by fraud, mistake, or undue influence. (13 Cal. Jur. 855, sec. 50; *Miller* v. *Brode*, 186 Cal. 409 [199 Pac. 531] ; *Estate of McCauley*, 138 Cal. 546 [71 Pac. 458] ; *Swain* v. *Duane*, 48 Cal. 358.) In the case of *Miller* v. *Brode, supra,* it is said: " . . . Although the property is purchased with community funds, and is conveyed to the wife with the husband's consent by a deed expressly describing it as her separate estate, it is as if the husband himself had conveyed community property to her by deed expressing that she took it as her separate estate. Such a conveyance would be nothing more nor less than an express gift by the husband to the wife of community property. (*Swain* v. *Duane*, 48 Cal. 358; *Shanahan* v. *Crampton*, 92 Cal. 9 [28 Pac. 50].) There is no impediment to a husband making such a gift if he desires, and if he does it, the property at once becomes the wife's separate property, and the effect of the conveyance in this respect cannot be avoided except by avoiding the conveyance itself. This, of course, cannot be done except for fraud, mistake or some similar ground. In the absence of some such ground for setting aside the transaction it is wholly immaterial that the property was community property before

the husband conveyed it to the wife, or in case it were conveyed to her by a third person that the consideration given for it was community property. Its character is changed at once by the conveyance to the wife as her separate property either by the husband directly, or by a third person with his consent.''

In transactions between a husband and wife the rule with respect to confidential relations obtains (Civ. Code, sec. 158), and precludes either from obtaining an unfair advantage of the other through fraud, mistake, or undue influence. Such transactions are considered subject to the rules which affect the relationship between a trustee and beneficiary; their relationship is in fact presumed to be confidential (13 Cal. Jur. 860, sec. 54; *Estate of Cover,* 188 Cal. 133, 143 [204 Pac. 583]), and where either obtains an advantage over the other, the transaction is presumed to have been without adequate consideration and to have been secured through undue influence, and the burden is then cast upon him who has the advantage to show that it was fair and free from fraud or undue influence. (13 Cal. Jur. 860, secs. 54–56; *Locke Paddon* v. *Locke Paddon,* 194 Cal. 73, 80 [227 Pac. 715] ; *Henley* v. *Bursell,* 61 Cal. App. 511, 516 [215 Pac. 114] ; *Williamson* v. *Williamson,* 41 Cal. App. 721 [183 Pac. 301].) But where dissension exists between a husband and wife, and they have become estranged on that account, the execution of a conveyance of property from the husband to the wife, which is free from fraud or undue influence, made as an inducement for reconciliation, harmony, and the renewal of marital relations, constitutes a sufficient consideration for the execution of the instrument. (*Williamson* v. *Williamson, supra; Tillaux* v. *Tillaux,* 115 Cal. 663 [47 Pac. 691].)

The evidence in the instant case is without substantial conflict to the effect that the deed and bill of sale were executed and delivered from respondent to appellant as an inducement for reconciliation, the restoration of harmony, and resumption of marital relations. The respondent testified that for several years prior to the execution of the instruments they had lived in a state of domestic turbulence; quarrels were frequent, and the wife often accused him of abusing her and of spending his money on other women. Upon inquiry as to the seriousness of

their trouble prior to the execution of the instruments, appellant replied: "That is the point—we were going to have some separation." In response to the question as to why he had executed the conveyances, respondent said: "I thought if I deeded the place to her, and she was not worrying . . . it would be better. She was grumbling and growling all the time. I thought to myself, it would be (a) better way, and make a better home if I deeded the property to her, and lived there just the same. I spoke to her and asked her if it would be all right, and she said yes. I said, 'All right, but you must quit your grumbling, and growling, and (we must) go ahead and live together, if I do it.' And she agreed to it."

It further appears that at the time the deed and bill of sale were executed in the office of Senator Nelson another instrument was executed and delivered to the respective parties, which was subsequently lost, but which apparently provided in effect that in the event of future trouble between them resulting in a separation, this property which had just been conveyed should be in lieu of maintenance. When asked for the contents of this document appellant replied: "It was an agreement, if I left him, or either one left the other, each would . . . support ourselves." After the execution of these instruments the parties appear to have lived together for several years in comparative harmony, and then hostilities were renewed and the condition became more intolerable than before, according to respondent's testimony. There was, however, ample evidence to indicate that the trouble was not due entirely to the conduct of appellant, but accepting it most favorably to respondent, the record is entirely devoid of evidence that the instruments in question were procured by fraud, deceit, or undue influence. They were voluntarily made by the grantor at his own suggestion for the purpose of reconciling their differences. Evidently this effort was a failure. Respondent then brought this suit for divorce and sought to set aside these conveyances. This, then, was nothing more than a failure of purpose, or of consideration. Neither the complaint, the findings, nor the evidence warrants a charge of a lack of good faith on the part of appellant. It was not alleged, and is not contended, that she deceived respondent in making this agreement to avoid

trouble, or that she procured the conveyances by this means with a previous intention not to fulfill her promise. Nor is it alleged that respondent relied upon any such promises. So far as the record is concerned, both parties entered upon the negotiations in perfect good faith with a view of securing a reconciliation. All that is charged is that she afterward failed to fulfill her agreement. This is an insufficient showing upon which to set aside a deed upon the ground of fraud or mistake.

The case of *Tillaux* v. *Tillaux, supra,* is very similar to the instant case in both facts and issues presented. In that case the parties were husband and wife. Serious domestic trouble existed between them. With the apparent object of reconciliation, the husband voluntarily made a deed of conveyance to certain real property to his wife. At the same time they executed another instrument which purported to declare their relationship toward each other in the event of a future separation. This agreement contained this statement: "They do hereby each of them agree not to molest or interfere with one or the other, in or about the business or living of the other." Thereafter the parties continued to live together for about four years, when domestic trouble again arose. They were separated, and a suit was commenced to set aside the deed upon substantially the same grounds contended for in this case. A demurrer to the complaint was sustained, and the order was affirmed on appeal. The appellant there contended that the deed was void because there was no consideration for the deed; that the defendant's promise not to molest or disturb plaintiff did not constitute a consideration, because it was a mere agreement to perform the duties required by law; that the deed was void because the wife secured advantages through the confidential relationship of husband and wife. To all of which contentions Mr. Justice McFarland replied: "We do not think that these positions are tenable." After reasoning these contentions to a logical conclusion, the able jurist finally holds: "There is no averment that she had no intention to perform the agreement . . . to live peaceably with appellant in the usual affectionate relation of husband and wife."

This appears to be the precise situation in the instant case. There are neither allegations, proof, nor findings in this

case to the effect that appellant did not intend to carry out her agreement to preserve harmony, nor that respondent relied upon her promise, or was deceived thereby. Giving respondent's evidence its full force, it falls far short of proof of fraud, deceit, mistake, or undue influence. (12 Cal. Jur. 812; *Lawrence* v. *Gayetty,* 78 Cal. 126 [12 Am. St. Rep. 29, 20 Pac. 382]; *Mitchell* v. *California-Pacific Title Ins. Co.,* 79 Cal. App. 45 [248 Pac. 1035]; *James* v. *James,* 80 Cal. App. 185 [251 Pac. 666].) In the last case above cited the syllabus correctly states the law applicable as follows: "A deed without fraud in its inception conveys the title, and is not void on account of failure of consideration, either in whole or in part, and inasmuch as acts done subsequent to the execution of a deed cannot affect its integrity, a subsequent failure of consideration or breach of personal covenant, not amounting to a condition, will not avoid the deed."

Appellant challenges the findings of the court to the effect that the phrase "as and for her separate property" was written into the deed and bill of sale by inadvertence and mistake, and that respondent understood and spoke English poorly, and that the instruments in question were neither read nor explained to respondent before he executed them.

A careful examination of the record forces us to the conclusion that these findings are not supported by the evidence. Sifted to a final analysis, the bare presumption which accompanies confidential relationship of a husband and wife is about all that is left to support the issue of fraud or mistake. Senator Nelson, one of appellant's attorneys, who drew the deed and bill of sale at the request of respondent, testified that Mr. and Mrs. Dale came to his office October 23, 1918, and that respondent told him he wanted to deed this property to his wife; that he intended to leave her, and he wanted it so arranged that she could not come back on him for support in the future; that he wanted her to be able to collect the money from the creamery and handle the property without his signature, exactly as her own. Mr. Nelson also said that he thereupon drew the deed and bill of sale so as to carry out respondent's desire, incorporating the clause "as and for her separate property" in each document, and explained

the instruments to respondent, who said that was exactly what he wanted. These instruments were then delivered to appellant, who was advised to record them, which she subsequently did. At the same time at which these two conveyances were made the senator also drew up an agreement in duplicate providing that the property described in the deed and bill of sale, in the event of a separation of the parties, was to be in lieu of all future maintenance of appellant, and prohibiting her from coming back upon respondent for further support. This agreement was drawn pursuant to the directions of respondent, and a copy was given to each of the parties. Mr. Nelson was then asked regarding his explanation of these instruments to respondent: "Q. Did you read the deed and bill of sale to Mr. Dale? A. The language used in the deed was explained to Mr. Dale; . . . I explained to him . . . that it would give her full title and control of the land described and the personal property mentioned, and that was just exactly what he wanted. . . . Q. At the time you drew this deed and bill of sale, you were acting as attorney for Mrs. Dale, and not for him? A. No, sir, Mr. Dale was doing the talking, and Mrs. Dale assented to what he had to say. . . . I was acting for both parties."

Respondent substantially admitted that Mr. Nelson was acting as his attorney in preparing the documents. He testified that he voluntarily went to Senator Nelson's office to have them drawn. "Q. Why did you go back to Mr. Nelson's office? A. Well, I understood that Mr. Nelson would be willing on account of his position (as assistant district attorney) to help a man out for a reasonable fee, for anything like that—of course, he was an attorney, and that is the reason I went there. . . . "

Moreover, while respondent did testify, in a very unsatisfactory manner, that Mr. Nelson did not read or explain the deed or bill of sale to him, he failed to deny that he had told his attorney just what Mr. Nelson charged him with saying with relation to his intent and purpose in making the conveyances to his wife, as above related. It must, therefore, be assumed that the record is undisputed to the effect that respondent instructed his attorney to draw the conveyances to the property in favor of his wife, so that she could handle it exactly as her own without the necessity of his signature,

and so that she could not demand of him future support, after he had left her, as he intended to do. This is precisely what Mr. Nelson attempted to do by the terms of these instruments, and it would therefore appear to be true that the purport and effect of the clause "as and for her separate property" was duly authorized by respondent, and hence was not inserted in the documents by inadvertence or mistake.

There is no evidence that respondent was ignorant of the English language. Carefully scrutinizing the lengthy examination of respondent as a witness, this court is satisfied that he possessed a very good knowledge of the English language, and appeared to clearly understand every question, which he invariably answered directly and intelligently. Regarding his opportunity for knowing the terms of the instruments, he testified: "Q. Did you read the deed and bill of sale? A. I did partly. . . . Q. Did Mr. Nelson read them over? A. I can't say whether he did or not. . . . "

In view of the positive statements of Mr. Nelson that he drew the instruments according to respondent's directions, and that he explained them to him, that they expressed a reasonable solution of the situation existing between the parties at that time, and that respondent failed to deny the statements he was alleged to have made to his lawyer with respect to his intent and purpose in making the conveyances to his wife, together with his equivocal replies regarding the reading or explaining of the instruments to him by Mr. Nelson, the record falls far short of supporting the findings to the effect that respondent was ignorant of the terms of the instruments, or that the clause "as and for her separate property" was inserted in them through inadvertence or mistake.

In an action to reform an instrument upon the ground of fraud or mistake, the evidence must be clear and convincing, and not merely equivocal or contradictory, leaving the question of fraud or mistake in doubt. (3 Jones' Commentaries on Evidence, 2784, sec. 1525; 2 Pomeroy's Equity Jurisprudence, 4th ed., 1756, sec. 859, p. 4740, sec. 2103; 22 Cal. Jur. 739, sec. 22; *Lestrade* v. *Barth*, 19 Cal. 660, 675; *Burt* v. *Los Angeles Olive Growers Assn.*, 175 Cal. 668, 675 [166 Pac. 993].) In the last case above cited the court says: "Where so solemn an instrument . . . is

sought to be reformed for mistake, evidence of the mistake must be clear and convincing, and not loose, equivocal or contradictory, leaving the mistake open to doubt.''

Under the facts of this case the respondent may not complain because he failed to read or understand the terms of the instrument. This duty was imposed upon his attorney whom he employed to draw the documents. A grantor who executes a deed of conveyance, in the absence of a showing of fraud or mistake, will not be relieved from the effect of the clear terms of the instrument merely because he neglected to read it, or even if he is unable to read or understand it. Reasonable prudence requires one to either read the document he proposes to execute or, if he is unable to do so, to procure the assistance of someone who can read and explain its terms. (*Burt* v. *Los Angeles Olive Growers Assn.*, *supra*; *Russell* v. *Riley & Peterson*, 82 Cal. App. 728 [256 Pac. 557]; *Hawkins* v. *Hawkins*, 50 Cal. 558.) In the last case above cited it is said: ''The care and diligence of a prudent man in the transaction of his business would demand an examination of the instrument before signing, either by himself or by someone for him, in whom he had a right to place confidence. The fact that the plaintiff was illiterate, and could read manuscript only with difficulty, did not render this precaution less necessary.''

It is unnecessary to pass upon other points raised by the appellant.

For the foregoing reasons the judgment is reversed so far as it purports to reform the deed and bill of sale involved, by striking therefrom the clause ''as and for her separate property,'' and so far as it purports to distribute the property described in said instrument as community property, to the respective parties, share and share alike. Otherwise the judgment is affirmed and will remain in full force and effect.

Sturtevant, J., and Koford, P. J., concurred.