[Civ. No. 18092. First Dist., Div. Two. Feb. 16, 1959.]

MARGARET B. SCHWAB, Respondent, v. ARTHUR C. SCHWAB, Appellant.

*Assigned by Chairman of Judicial Council.

Donovan, Stuhr & Martin for Appellant.

Beresford, Jacobs & Rosenberg, Robert Beresford and Robert Francis Jacobs for Respondent.

DOOLING, J.—Defendant Arthur C. Schwab appeals from a judgment in favor of plaintiff setting aside, as to a one-half interest, an assignment of her deceased husband to appellant of a promissory note secured by deed of trust on an apartment building.

Respondent and the decedent John Schwab were married in 1936. At that time John requested her to convey to him as joint tenant a one-half interest in a home owned by her and in which they subsequently lived. This she did.

In 1944 respondent and her husband purchased an apartment building. Record title was taken in their names as joint tenants but it was their understanding that it was community

property and over one-half the purchase price came from respondent's earnings.

On April 17, 1950, respondent by deed conveyed to her husband her interest in the apartment and he conveyed to her his interest in the home. Respondent testified that these transfers were prompted by marital difficulties, her husband having told her that he wanted to separate from her and move to Colorado. Thereafter John did leave her and go away for a short period. After a brief absence John returned and they resumed their marital relations. She testified that upon his return it was orally agreed between them that the ownership of the apartment should be as it had been before her conveyance but that the home should remain her separate property. Respondent did not ask her husband to retransfer by deed an interest in the apartment and the record title remained in him.

John sold the apartment in 1951 and received a promissory note secured by deed of trust for the unpaid portion of the purchase price. In May, 1951, John executed an assignment of the note and deed of trust to appellant, his son by a former marriage, upon the understanding that he would continue to receive the monthly payments so long as he lived. John died in August, 1955, and respondent did not learn of this assignment until about two months before his death. She asked the appellant to assign to her the note and deed of trust but he refused.

The complaint was in two counts. The first count alleged the separation and transfer from respondent of her interest in the apartment. It then pleaded the reconciliation and alleged that at that time the parties "mutually agreed that said real property thereupon became and would continue to be their community property."

The second count alleged that in consideration of their resumption of marital relations and her promise to care for him John promised to devise and bequeath to her one-half of said property.

The trial court found the allegations of the first count to be true and made no findings on the second count.

 It is now too well settled for dispute that husband and wife may by their oral agreement transmute any property owned by either to community property. (*Woods* v. *Security-First Nat. Bank*, 46 Cal.2d 697, 701 [299 P.2d 657]; *Estate of Hartnett*, 155 Cal.App.2d 280, 283 [318 P.2d 81]; 10 Cal. Jur.2d, Community Property, § 58, pp. 733-734.)

Appellant however attacks the sufficiency of the evidence to support the agreement. Respondent testified:

"Well, he said that nobody seemed to understand him or take care of him the way I did, and he wanted to come back, and for me to take care of him, and that everything would be the same. The property would go back to belonging to us both. . . .

"Well, he said in case of his death, the property would be evenly divided, and that I would not be sorry for taking him back and caring for him the way he wanted me to. . . .

"Well, he said it would go back to both our names again, and that it would be—mine and his, just like it was before. . . .

"Well, he told me that the 5th Street property (the apartment) would be back in both our names. . . .

"Well, he told me that that place was ours, we worked for it together, and we bought it, and it was ours. . . .

"He said, and I said, that the property would be community property again. . . .

"Q. (By Mr. Stuhr) You used those words: 'The property will be community property again?' A. Both—yes, he and I said that, yes."

On cross-examination respondent was asked: "That he agreed with you that if you would care for him and administer to him as a wife normally does to a husband, that he would give to you this property, is that correct?"

Her answer was: "Yes, something like that. . . .

"Q. And he would give you the property? A. Yes, that is what he told me."

Appellant argues that this evidence was too uncertain to support a finding of an agreement presently transmuting the property to community property. The weighing of the evidence, the reconciling of inconsistencies therein and the determination of its effect is the trial court's function and the evidence is sufficient to support the trial court's finding that it was the understanding of the parties that this property should immediately become their community property upon the resumption of their marital relations.

Appellant adverts to the rule that when one party is dead the testimony of the other concerning oral agreements between them must be viewed with extreme caution and subjected to careful scrutiny. (*Estate of Henderson*, 128 Cal.App. 397 [17 P.2d 786] ; 10 Cal.Jur.2d, Community Property, § 59, p. 734.) This is a rule for the guidance of the trial court and all that is required on appeal is that the finding be supported by the

evidence. (*McRay* v. *Winter*, 118 Cal.App.2d 800, 802 [258 P.2d 872].)

Appellant further seizes on the one answer of respondent that "he said in case of his death, the property would be evenly divided" and argues 1. that this is inconsistent with the intention of the husband that the property should be immediately transmuted to community property and 2. that it was therefore prejudicial error to fail to find on the allegations of count 2 of the complaint. The finding that the property was immediately transmuted to the community is inconsistent with the theory of count 2 that the agreement was one to devise one-half. It was for the trial court to determine from all of the testimony the effect of the agreement of the parties. If the trial court believed respondent's other testimony the parties agreed that the property should immediately become their community property in which event the statement that in case of death the property would be evenly divided amounted to no more than the husband's statement of his understanding of the effect of its community character. The failure to find on the second count did not prejudice appellant since the findings on the first count not only fully support the judgment but are inconsistent with the theory pleaded in count 2. Where the findings on one count support the judgment there is no necessity to find upon another. (24 Cal. Jur., Trial, § 184, p. 939; *Adams* v. *Helbing*, 107 Cal. 298, 302 [40 P. 422].)

Finally appellant argues that the oral agreement of the parties was against public policy since the consideration was the wife's promise to perform the normal duties of a spouse. (Civ. Code, § 159; *Brooks* v. *Brooks*, 48 Cal.App.2d 347 [119 P.2d 970].) The agreement transmuting the character of the property was executed, not executory, but assuming that we must look to the consideration for the executed agreement it included the reconciliation of the parties who had previously separated. An agreement promoting reconciliation is favored by the law and is not illegal. (*Bowden* v. *Bowden*, 175 Cal. 711 [167 P. 154, Ann.Cas. 1918A 380]; *Dale* v. *Dale*, 87 Cal.App. 359, 364 [262 P. 339]; Rest., Contracts, § 585.) We can find no support in law for appellant's claim that in order to make this rule applicable there must be a separation by agreement of the parties in writing. The cases last above cited are to the contrary.

Judgment affirmed.

Kaufman, P. J., and Draper, J., concurred.