[Civ. No. 4906. Second Appellate District, Division Two.—June 20, 1927.]

J. WALTER SMITH et al., Appellants, v. A. G. BUTLER, Respondent.

Pollock & Mitchell for Appellants.

E. H. Jolliffe for Respondent.

MURPHEY, J., *pro tem.*—This is an action by the plaintiffs to declare a trust and to compel the defendant to restore plaintiffs to their rights under a conditional sales contract for the purchase of real estate. In the month of April, 1920, plaintiffs and . defendant entered into a contract for the purchase and sale of certain real property in the town of Ontario, county of San Bernardino. Under the terms of the contract plaintiffs made an initial payment of $1,350 and subsequently made two semi-annual payments of $881 each, together with interest as prescribed by the contract. The total purchase price of the property was fixed at $12,000. The third payment of $881 and interest was about to become due in October, 1921, when the plaintiffs informed the defendant that they would be unable to ' make said payment on account of financial difficulties and requested an extension of time. It is plaintiffs' contention that the defendant then proposed that if

the plaintiffs would execute a quitclaim deed to the premises, assign their contract of purchase and would within six months pay to the defendant the October payment of $881, together with an additional one per cent interest thereon, and pay rental for the stores located on the real property during the extended period, that he, defendant, would restore the contract of purchase and restore plaintiffs to all their rights and interest in the real property. Plaintiffs further contend that in pursuance of this proposal they did execute and deliver to defendant a quitclaim deed to said property, together with an assignment of the contract, which deed was recorded in the office of the county recorder of San Bernardino County; that thereafter plaintiffs paid the rental on the stores located on said property and within six months tendered to the defendant the amount of the October payment with interest and additional interest and the further sum of $662 with interest, being the amount they claimed due, less rental payments, on the fourth semi-annual payment, and demanded the restoration of the contract of purchase to them; that defendant thereupon failed, neglected, and refused to recognize the rights of said plaintiffs in and to said property under said contract, and refused to accept said money and refused to restore to plaintiffs their rights and interest in said property under the contract; plaintiffs further allege that thereafter they made further tender of the succeeding semi-annual payments, which were by the defendants refused, and that on the sixth day of April, 1922, they deposited all of said sums of money in escrow with the First National Bank of Ontario to be delivered to defendant upon the delivery to said bank of a reassignment of the original contract of purchase. The defendant denies that he made any such proposition to plaintiffs and denied that he ever agreed to reconvey the property or reassign the contract to plaintiffs. The record discloses that there was no written agreement on the part of the defendant to reconvey the property nor to reassign the contract, and it is an admitted fact that no such writing was ever made by the defendant or ever existed.

The findings of the court are in favor of the defendant, and in so far as material to this issue are substantially as follows: The court found that it is not true that the de-

fendant prior to the delivery of said deed last aforesaid or at any time proposed to said plaintiffs or anyone else that if they would execute a quitclaim deed conveying all their right, title, and interest in and to the land described in the complaint and would thereafter within six months pay to the defendant the sum of $881.25 due on October 6, 1921, together with an additional one per cent interest thereon, and would pay the sum of $52 rent for the stores located on said lot during the period of said extension, that he, the defendant, would restore said contract and would restore plaintiffs to all of their right, title and interest in and to said property; that no such proposition was ever made by said defendant to said plaintiffs at any time; that said quitclaim deed and said assignment were executed and delivered to defendant by plaintiffs for the consideration that said plaintiffs would then and there be released from all further obligation imposed on them by the provisions of said contract of purchase and sale; that the plaintiffs or either of them paid to said defendant $52 rental for the month of October, 1921, and each succeeding month up to October, 1922, or any other sum as rental of said real property, except the sum of $12 per month for the months aforementioned, which was paid by plaintiffs to defendant as rental of one building situated on said premises and occupied by said plaintiffs; that it is not true that the plaintiffs deposited in the First National Bank of Ontario any sum of money or any money at all to be delivered to the defendant when the latter should deliver to said bank a reassignment of said contract, and it is not true that the said plaintiffs or either of them deposited in said bank or in any other bank, or any other place, any money to be delivered to said defendant; that the plaintiffs were in default in the performance of the agreements and conditions set forth in said contract; that they failed to keep said property insured and failed to pay the taxes thereon and were unable to meet the payments provided for in said contract.

■ Notwithstanding the statement of facts as above set forth, contained in the findings of the court, it is the plaintiffs' contention, first, that there was no consideration for the quitclaim deed and the assignment of the contract, and, second, that a trust is created in their favor by im-

plication of law—neither of which positions can be sustained. There was evidence to · support every finding made by the court. It is true that the testimony is conflicting, but it is not the province or the disposition of this court to attempt to reconcile divergent statements or to draw therefrom conclusions at variance with those reached by the trial judge. He saw and heard the witnesses and should be able to determine the truth. One circumstance relied upon by plaintiffs to discredit the testimony given by the defendant upon which the findings of the court are based may be worthy of comment. In the early stages of the negotiations between the parties, and ·prior to the signing of the quitclaim deed and assignment, at the time when the plaintiffs informed the defendant that they would be unable to make the October payment and requested an extension, the defendant intimated that he would entertain such a proposition, but before any papers were signed he testified that one of the plaintiffs, who at the time were in financial difficulties and had made an assignment for the benefit of their creditors to the Los Angeles Board of Trade, came to him and said that he had been advised by an attorney that they could enter into no binding agreement with reference to his retaining any interest in the property. This, of course, could have but one meaning—that no agreement could be made that would preserve the property for plaintiffs in derogation of the rights of their creditors. In response to this request defendant testified that he stated that there would be no agreement, and that there was no agreement, and that that was the status of the situation when the papers were actually signed. ■ There was ample consideration for the signing of the papers, as set out in the findings of the court, if consideration other than that implied by law may be deemed to be necessary.

The law of the case is clearly expressed, not only in code section, but by all the text-writers and numerous decisions of the supreme court of this state. In the case of *Tillaux* v. *Tillaux*, 115 Cal. 668 [47 Pac. 691], the supreme court says: ''A deed by the owner of land, duly signed and acknowledged by him and delivered to the grantee, conveying the land to the latter in fee simple, is one of the most solemn of civil acts. It is not a thing to be played

with, or reclaimed at pleasure, as a hawk in falconry. It is not void on account of either want or failure of consideration; nor does want or failure of consideration raise a resulting trust. Leading authorities declaring this principle are cited in the opinion of the supreme court of Michigan in *Jackson* v. *Cleveland,* 15 Mich. 94 [90 Am. Dec. 266]. The court, among other things, says: 'A voluntary deed, which purports to be for the beneficial use of the grantee, and which was made deliberately and without mistake or contrivance, does not differ from any other deed in binding the grantor, and can only be attacked by those having superior equities which the grantor had no right to cut off—as creditors and the like. . . . This doctrine of resulting trusts has never been applied to mere voluntary conveyances. Mere want of consideration has never raised resulting trusts out of these.' . . . A court of chancery has never ventured, against the express will of the donor appearing on the face of the deed, 'to take the use from the donee, and give it back to the donor.' '' In Devlin on Deeds, section 1189, the author says: ''It is now settled law that a trust does not result to the grantor merely because there was no consideration for the conveyance''— citing a number of authorities; and the same author says (section 834) : ''But parol declarations cannot be received with this object, for in these cases there exists no resulting or presumptive trust, and the admission of such evidence would be for the purpose of contradicting the written instrument, and establishing a trust in the very teeth of the statute of frauds.'' In the case last above cited, an action between husband and wife, the element of confidential relationship was involved, which is absent from the instant case. It may be also said in passing that there is no allegation of fraud, which on the record disclosed would appear to be a necessary element to successfully attack the deed and assignment disclosed by this litigation.

In the case of *Feeney* v. *Howard,* 79 Cal. 525, at page 528 [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984], the supreme court says: ''The counsel for the defendant is in error when he contends that the case presents features of actual or constructive fraud. No actual fraud was alleged. A material ingredient of actual fraud is the fraudulent intent, and this must be alleged as one of the facts

constituting the fraud. . . . No actual fraud is alleged, found, or shown by the evidence. For all that appears to the contrary, Michael Feeney's deed may have been given and received in entire good faith. The mere failure to perform a parol agreement which was made in good faith is not fraud.'' Plaintiffs in their brief have cited innumerable authorities with no effort on their part to distinguish them or to apply them to the facts of the case. Their entire argument is predicated upon a state of facts that does not exist. They have assumed from the beginning that a contract was entered into which had no existence in fact and is contrary to the express findings and conclusions of the court. The inevitable result of this is that the authorities cited have no application whatever to the issue to be determined.

Judgment affirmed.

Craig, Acting P. J., and Thompson, J., concurred.