[L. A. No. 14227. In Bank.—April 1, 1935.]

In the Matter of the Estate of ANNA K. BRYANT, Deceased. MRS. J. C. BUSH et al., Petitioners and Appellants, v. MARGARET GREENLEAF et al., Contestants and Appellants; JOHN I. BUJAN, Administrator.

Murphy & Doherty and Harrison Weil for Petitioners and Appellants.

Zach Lamar Cobb and Earl A. Littlejohns for Contestants and Appellants.

Milton Bryan for Respondent Administrator.

George C. Wheeler, Allard, Stead & Whyte, Warren H. Atherton, Barton Conreau and S. Joseph Theisen, as *Amici Curiae* on Behalf of Contestants and Appellants.

SEAWELL, J.—Both parties to this proceeding have appealed from those portions of the judgment therein entered by the probate court determining heirship in the above-entitled matter which were adverse to said respective parties.

Thomas Bryant, deceased, was the father of Mrs. J. C.

Bush, Thomas Bryant, Jr., and J. Ross Bryant by a former marriage. Anna K. Bryant, deceased, whose estate is the subject of distribution herein, was his wife by a second marriage and was his widow upon his demise. She had once before been married but she bore no children as the issue of either marriage. She died intestate June 5, 1931, in the county of Los Angeles, leaving neither father nor mother. Her next of kin surviving her are Margaret Greenleaf, a sister, and two nephews and three nieces, the issue of deceased brothers.

Thomas Bryant and his former or first wife, mother of petitioners herein, were married in the state of Colorado on January 22, 1885, and soon thereafter they removed to Butte, Montana, where he was at first employed as a common miner. He advanced progressively from one position to another. In 1905 or 1906 he was made superintendent of the mining properties of the late Senator W. A. Clark. His salary from all sources for some three or four years immediately prior to the decree of divorce which was granted to the first wife in the action brought by her against him, was $1,000 per month. During this coverture he made mining investments which returned him approximately $60,000. One week after said decree of divorce was granted he married said second wife, Anna K. Healy. The mother of said children was given their custody. She reared them without receiving any financial assistance from their father by way of settlement, alimony allowance for herself or support for said children except the Salt Lake City residence, valued at $10,000, which was conveyed to her by her former husband, Thomas Bryant. Thomas Bryant and his wife by said second marriage, Anna K. Bryant, removed to Los Angeles County in 1914, where he engaged in several business enterprises until a short time before his death, which occurred in said county of Los Angeles on November 4, 1927. Anna K. Bryant, his wife, died in the county of Los Angeles on June 5, 1931, leaving the estate which is the subject of contest between the children of Thomas Bryant and his former wife on the one side and a sister and children of three deceased brothers of said Anna K. Bryant, on the other side. For the purpose of convenience the first group, children of Thomas Bryant, will hereafter be referred to as petitioners, and the second group, the next of kin and heirs at law of

Anna K. Bryant, as contestants. Said parties have been so designated by the parties to the proceeding. On March 15, 1932, the first group commenced this proceeding under the authority of section 1080 of the Probate Code for the determination of heirship and the right to distribution of the estate. The rights of the parties to succeed to the properties of the estate are controlled by subdivision 8, section 1386 of the Civil Code, the decedent having died prior to the effective date of the Probate Code. As to all matters of procedure the Probate Code rules. During the first marriage Thomas Bryant made a considerable fortune. How much of this he possessed at the time of his second marriage was not definitely determined at the trial.

During his second marriage, through business transactions and land speculation he made and lost considerable sums of money. His best investment in California was the purchase in 1923 of a one-third interest in an electric tramway operated between Venice and Ocean Park, from his close friend T. M. Gibbons. The original investment was listed at $60,000 and Mr. Bryant's one-third interest was evidenced by his promissory note given to Mr. Gibbons, the owner of the remainder. This note was paid out of the earnings of the tramway and in addition thereto Mr. Bryant was paid in dividends something over $38,000 and a salary somewhat exceeding $11,000. Four years after the purchase of an interest in said tramway Thomas Bryant died. He left a will executed August 26, 1924, devising and bequeathing all of his estate to Anna K. Bryant, expressly excluding his three children, petitioners herein, from sharing in any part of his estate. Said will was never offered for probate upon the claim that he left no estate to probate.

The probate court found that the properties held by Thomas Bryant and Anna K. Bryant during their married life were of two kinds, to wit: separate properties of Thomas Bryant, owned and held by him prior to his marriage to decedent; community property acquired subsequent to the marriage of Thomas Bryant and decedent; separate estate of Anna K. Bryant, in the sum of $2,400, acquired as a legacy by decedent from her mother. This $2,400 was not specifically traced and there was no evidence to show that it reached the estate of Anna K. Bryant.

Said court also found that during the marriage relationship of Thomas Bryant and decedent, and shortly prior to

his death, he converted certain properties into the separate estate of Anna K. Bryant by gift *inter vivos* which properties were held by her as her separate property to and including the date of her death. Said properties (not including the tramway) consist of certain real property and a long list of personal property.

One of the principal grounds of dispute between the two groups of opposing heirs is whether a certain bill of sale made and executed on April 15, 1927, by Thomas Bryant to Anna K. Bryant conveyed the title of said tramway to his said wife. The court found that said tramway was acquired by the earnings of Thomas Bryant during coverture with said Anna K. Bryant and was property of the community. It expressly found that said bill of sale did not amount to a transfer by gift *inter vivos* or *causa mortis* but that the intent of the maker of said instrument was testamentary in character and did not evince an intent to convey said tramway as either a gift *inter vivos* or *causa mortis* to Anna K. Bryant. Contestants vigorously assail the finding which holds that said instrument, which in form is a bill of sale, should be construed to be an ineffectual attempt to pass title to property by a testamentary act. We have examined the evidence directed to this issue and while it may be said that there is evidence in the record which possibly might support a finding holding either way, it cannot be said that there is no substantial evidence supporting the conclusion arrived at by the trial court. The reason for its conclusion is as well or better fortified as any which could be urged in support of a contrary conclusion.

Thomas Bryant's unprobated will by which he made Anna Bryant his sole legatee and devisee was executed August 26, 1924. Said instrument denominated a bill of sale but which was held by the probate court to have been an attempt on the part of Mr. Bryant to avoid probate, and therefore testamentary in character, was executed April 15, 1927. On the same day said will was executed Thomas Bryant wrote a letter to his partner, Mr. Gibbons, that it was his wish that his wife should *succeed* to all of his interest in the tramway company and that it might be taken over by her "without the delay or expense incident to probate proceedings". He thanked Mr. Gibbons for his suggestion as to the method of transferring title of said interest in the event of death, upon a plan initiated and formulated by Mr. Gibbons. Mr.

Gibbons realized that Mr. Bryant was a sick man and could not live a great while and he wished to avoid any interruption to the business in case either should die. He therefore suggested to Mr. Bryant that each execute to his respective wife a bill of sale to the end that the business would continue without the intervention of probate proceedings in case of the death of either one. Mr. Bryant readily assented to the plan and left the entire matter in the hands of Mr. Gibbons. He consulted an attorney and had three instruments drawn, one to be signed by his brother who owned a small interest in the tramway, one by himself, and one by Mr. Bryant. They looked them over and signed them in the presence of one another. Mr. Gibbons originated and dominated the whole program. Mr. Bryant never suggested to his partner, Mr. Gibbons, that he was in a serious physical condition or was acting in fear of impending death.

Upon a full and fair hearing on this question the trial court found that the bill of sale was not made in view of impending death; that it was executed at the request of his partner with the understanding that both partners would execute similar documents which would not be delivered nor take effect until the death of either partner; that Mr. Bryant exercised and maintained the same exclusive control and dominion over the property that he had exercised from the beginning of his ownership; that the books showed Thomas Bryant to be the owner of said one-third interest until after his death and that they were then voluntarily changed by Mr. Gibbons so that it would appear that Mrs. Bryant had succeeded to her husband's interest; that all dividends or earnings from the tramway business were paid to Thomas Bryant up to the date of his death; that the bill of sale was at no time presented by Mrs. Bryant to the partnership until after Mr. Bryant's death.

In addition to the findings made on this issue, the trial court made a summation of the evidence and the law applicable to this question, which we incorporate as a part of our decision, to wit:

'' . . . The essential intent on the part of Bryant to completely divest himself of dominion over the property is lacking. (*Estate of Hall,* 154 Cal. 527 [98 Pac. 269].)

''It is strenuously urged, however, that there was a gift *causa mortis* of the Tramway property by Bryant to his wife. It is urged that the intent to make such a gift is

evidenced by the will of August 26, 1924, the letter bearing the same date addressed to Gibbons (though never delivered to him) and the bill of sale from Bryant to his wife executed under date of April 15, 1927. From the evidence, including these documents, there can be no doubt but that it was Thomas Bryant's intent that his wife should succeed to the Tramway property upon his death. The will, the undelivered letter addressed to Gibbons, the circumstances surrounding the execution of the bill of sale of April 15, 1927, considered in the light of the facts that Bryant did not part with dominion over his interest in this Tramway property but instead continued to collect dividends therefrom and to exercise such control over it up to the time of his death, as his health permitted, make it clear, however, that his intent was 'testamentary' in character rather than to make a gift to his wife either *inter vivos* or *causa mortis*. The evidence is conclusive that Thomas Bryant continued to collect dividends from the Tramway property up until the time of his death. It was only after his death that any change was made on the books of the partnership. No diminution in Bryant's dominion or control over the partnership property or his interest therein appears, except that his health did not permit him to give as much attention to its management during the closing months of his life as formerly. Neither does it appear that Mrs. Bryant made any attempt to collect dividends from the Tramway property during the lifetime of her husband nor did she attempt to assert any dominion or control over his interest therein until after his death.

"The circumstances surrounding the making of the bill of sale of April 15, 1927, do not indicate that this bill of sale was executed with an expectation of speedy death.

"Because of these, and other facts, appearing from the evidence, the court concludes that there was neither a gift *inter vivos* nor a gift *causa mortis* of the Tramway property." (Citing *Beebe* v. *Coffin*, 153 Cal. 174 [94 Pac. 766]; *Estate of Hall, supra,* and other authorities.)

■ During the four years following the death of her husband Mrs. Bryant received approximately $23,000 in dividends earned by the operation of the tramway under Mr. Gibbons' management. In addition to said earnings, Mr. Gibbons gave her a part-time office employment at a

salary of $50 per month. The total paid her as salary at the time of her death amounted to $2,400. She received no alimony or property from her former husband, whom she divorced in 1905, and during the period thenceforward to her marriage with Thomas Bryant she seems to have earned some money by giving music lessons, but her principal source of support was funds provided by a regular allowance contributed by Mr. Bryant. At the time of her marriage she had no separate property. There is evidence in the record of a hearsay character to the effect that either she, or she jointly with her husband, received a legacy in the sum of $2,400 from her mother some time between 1923 and 1925. This amount, however, is not traced into her estate or into the business of the tramway or any other property. Its actual existence and the form which it may have taken is left in a very nebulous state. The greater part, if not the whole of her estate, except the doubtful legacy above adverted to and the $50 per month salary came to her either as gifts from Thomas Bryant or as community property. Petitioners concede that the orange grove situated in West Highland, San Bernardino County, consisting of 8.64 acres, together with nine shares of West Highland water stock, which Mr. Bryant by mesne conveyances caused to be deeded to Mrs. Bryant, the jewelry, including diamonds, and the Etz mortgage, amounting to $3,500, are all separate property of the decedent which came to her as gifts from Mr. Bryant. Petitioners contest the finding of separate ownership of a 1927 Buick coupe, and certain loans secured by mortgage upon real property purchased after Mr. Bryant's death, and which are listed as bills receivable, and a long list of furniture, silverware, glassware, chinaware, musical instruments, pictures, wearing apparel, bed-furnishings, rugs and household effects generally, as set forth in schedule B, on the theory that there was no evidence to indicate their source, character or disposition. Disregarding, for the purposes of the case, the presumption that all property acquired after marriage by either husband or wife is community property (sec. 164, Civ. Code) and the many decisions of this court indulging that presumption in cases where no evidence exists as to the origin of property found in the possession of the last survivor, we are of the view that the property of a household or marital character found at the end of a long marital existence in the pos-

session of the last surviving spouse upon his or her death which occurred at a relatively short time following the death of the predeceased spouse, in the circumstances of this case, in the absence of rebutting proof may be inferred to be community property. The fact that decedent was a woman well advanced in years and was less than four years in widowhood, in the absence of contrary evidence, stands in rebuttal of any reasonable theory that she would in her circumstances and at her period in life indulge in purchasing a long list of expensive household furnishings, much of which was neither appropriate or necessary to the needs or comfort of a woman advanced in years. Besides, some of the listed articles show that they are exclusively for the use of men, or are adapted to the use of either husband or wife. All of this property is claimed to have been community property and if any was purchased after Bryant's death it was purchased with money earned in the operation of the tramway as dividends, said tramway being found to be community property. This finding, although made upon a consideration of conflicting evidence, we hold to be amply supported by evidence of a satisfactory character. The tramway was unquestionably the only revenue-producing property of any considerable consequence appearing in the list of properties owned by either spouse at the time of Bryant's death, or that came into Mrs. Bryant's possession from any source. She survived him but four years and she must have been approaching seventy years of age at the time of his death. She had had no business experience. On the other hand, Mr. Bryant was, before and during their married life, an active, capable business man and had managed the tramway business until sickness incapacitated him a few months before his death. Mr. Gibbons then assumed full charge and conducted the business to the day Mrs. Bryant died, without her assistance or advice. Mr. Bryant undoubtedly possessed considerable property at the time of marriage. A reading of his business activity and capability impels this conclusion. There is no evidence that the orange grove produced any revenue. In fact, her deed to the property is dated June 1, 1927, and she died June 5, 1931, a few days short of four years after she became the owner by gift. The net income should be easy of approximate computation. The net income from the $3,500 mortgage is most likely a simple matter of computation of inter-

est. The income from the tramway is, as was testified to by Mr. Gibbons, easily determinable from an examination of the account books of the tramway company. Other loans were made on real property after Mrs. Bryant's death and during the time when she was receiving the income from the tramway business. It would not be very laborious or difficult to at least apportion the moneys she received from the community property and her separate property either before or after Mr. Bryant's death.

We do not agree with the learned trial court that all of the property enumerated in schedule B should, upon a presumption, be classified as the separate estate of deceased, and it appearing that the greater part of it was acquired during coverture or from the earnings and proceeds thereof, and it not being shown that Mrs. Bryant acquired it or came into possession of it as her separate property in any of the ways provided by the provisions of the Civil Code, the presumption is that it is community property. Of course, this is but a presumption which may be overturned even by an inference tending to prove the contrary contention. We do not deem it necessary to rest the decision of this question upon mere presumptions of law, as a more satisfactory solution is deducible from evidence which, from the nature of the estate, may be readily produced tending to prove the character of the property in controversy. The application of bare legal presumptions is only indulged in cases where there is a total lack of evidence bearing on the question at issue. Here it appears that the sources of the funds are reasonably capable of ascertainment by inferences which reason makes from proved facts and there is no occasion to resort to a less uncertain method of determining which portion of said estate was separate property and which was community property. It is sufficient if this may proximately be done. The income-bearing properties are not so inextricably mixed or confused that their identity may not satisfactorily be segregated. In fact the household effects and much of the long list of property listed in schedule B has already been shown to be community property. The source of the small amounts of money loaned by the decedent after the death of her husband, and included in said schedule, may be reasonably determined by evidence showing the net income derived from the several pieces of income property.

■ If it should appear, however, upon a re-examination of this cause by the trial court, that the decedent was the owner of separate property or funds sufficient to have made the loans set forth in schedule B or purchases of unidentified property, if any, after her husband's death, it would be but a fair presumption that the unidentified property not traceable by direct or indirect evidence to any original source, belonged to her separate estate. We think, as was suggested under similar circumstances in *Stafford* v. *Martinoni*, 192 Cal. 724 [221 Pac. 919], this issue should be subjected to further consideration and review upon a retrial thereof.

■ Contestants urge that petitioners are not entitled to participate in any portion of the estate of decedent because the predeceased husband had by his will expressly excluded petitioners, his children, from participating in his estate. His wife was made his sole legatee and devisee. This contention is untenable. Petitioners took as statutory heirs under the provisions of section 1386, subdivision 8 of the Civil Code, and it was not in the power of the predeceased husband by any act of his to defeat the purpose of said code section. The will did no more than to vest the community interest of the testator in the wife. That act marked the limit of his dominion over said community property. The law made final disposition of whatever remained over subsequent to his death.

■ It is further contended that petitioners are estopped from asserting any rights to the estate herein because one of them, Mrs. J. C. Bush, had filed a petition to set aside the appointment of the administrator, as provided by section 450 of the Probate Code, and asked for the issuance of letters to herself. Upon her petition and proceedings had thereon the probate court seemed to have treated the matter as a proceeding to determine heirship and proceeded to make elaborate findings, whereby it held that no part of the estate of said Mrs. Bryant came to her by descent, devise or bequest from her husband, Thomas Bryant, and no part of said estate was the common property of Mrs. Bryant and her husband; that all of the property of the estate of Mrs. Bryant was at the time of her decease the sole and separate property of said deceased; that none of the children of Thomas Bryant was an heir at law of Mrs. Bryant, and none was entitled to share in her estate. Mrs. Bush's petition for letters was accordingly denied. It was further

found that the will of Thomas Bryant devised all of his estate to his wife to the exclusion of said children and that the will was never offered for probate for the reason that the testator left no estate save a few personal effects of slight value. It was found that said tramway interest was, for value, sold and conveyed to Mrs. Bryant in his lifetime. Thomas Bryant, Jr., and J. Ross Bryant were in no sense parties to the proceedings instituted by Mrs. Bush praying for the revocation of the letters issued to the administrator and for the appointment of herself. For all that appears from the record before us Thomas Bryant, Jr., and J. Ross Bryant may have been well satisfied with the appointment of the administrator whom Mrs. Bush desired to remove. Several reasons might be offered in support of the proposition that the proceedings had on the petition to remove the administrator were not *res judicata* as to Mrs. Bush in the proceeding to establish heirship or for distribution, and certainly not as to the other petitioners, if deemed helpful or necessary to illustrate this proposition by argument. A complete answer to contestants' complaint in this respect is that whether Mrs. Bush does or does not participate in the proceeds of the estate is no concern of theirs. Her failure to do so would in no sense enhance or add to their share of the estate. Therefore they will not be heard to complain as to whether two or three of the children of Thomas Bryant succeed to said community interest.

This disposes of all the controversial questions raised by the appeals.

It is but proper to say that in the solution of the questions here presented we have been aided by the investigations made by Presiding Justice Nourse, District Court of Appeal, First Appellate District, Division 2, when this cause was before said court.

The portion of the judgment awarding the tramway interest to petitioners and directing distribution thereof to them is affirmed.

The judgment awarding to contestants the San Bernardino County orange grove, the Etz note and mortgage of the value of approximately $3,500, the diamonds of which Mr. Bryant became the owner when a resident of the state of Montana, all of which property is conceded by petitioners to have been the separate property of Mrs. Bryant, is affirmed.

As to the household furniture, bric-a-brac, silverware, etc., there is a strong presumption that it is property of the community. However, if any evidence is obtainable which tends to dispel the presumption of the household furnishings and other property of a distinctively marital character the contestants will be permitted to produce it.

As to the notes and mortgages and some other property of doubtful value which came into the possession of Mrs. Bryant during Mr. Bryant's last illness and after his death, the source may be reasonably traced by showing the amount of her income from her separate property.

The cause is remanded with directions to proceed upon a retrial of the issues herein set at large. In all other respects the judgment is affirmed.

Curtis, J., Preston, J., Waste, C. J., Thompson, J., and Langdon, J., concurred.