[Civ. No. 13297. Second Dist., Div. Two. Dec. 24, 1941.]

EDITH GAINES, Appellant, v. CALIFORNIA TRUST COMPANY (a Corporation) et al., Respondents.

William Klein and George I. Devor for Appellant.

Swanwick, Donnelly & Proudfit, Clarence Thomason, J. B. Irsfeld, Douglas Fawcett and James B. Irsfeld, Jr., for Respondents.

HANSON, J. pro tem.—This is an appeal by the surviving wife of the decedent testator from a judgment refusing to cancel her written "waiver and election," which she signed in her husband's lifetime, to take under his will. The instrument, in question, not only authorized the husband to dispose of his separate property but the community property as well, with an election on the wife's part to take in accordance with the will. There was no consideration for the

wife's unilateral promise at the time the instrument was executed by her, other than a legally implied promise of the husband that he would not make a testamentary disposition except by the will, to which her written "waiver and election" was annexed. On the record before us the controlling question is whether the evidence sustains the judgment.

The facts necessary to be stated as a background in the light of which our decision must be resolved are these: Plaintiff-appellant was born and reared in England. She was educated by a governess until she was 15 years of age, and thereafter by her mother until her marriage. She married the testator in 1906. The following year they came to America to reside, and from 1918 to the death of her husband in October, 1936, they lived in California. They had no children. The record indicates that the parties were on the very best of terms throughout their married life. The wife had no business experience whatsoever, and so she was accustomed to sign whatever leases, deeds or business papers her husband placed before her without reading them or questioning him concerning them.

On or prior to March 4, 1936, the testator wrote out his will in longhand. While the record is not too clear on the point, it seems that the waiver and election clause here involved, which likewise was in his own hand, was not appended to the will at the time he first brought the will to his wife's attention. But whether it was or was not, it is clear that she did not see the clause until she actually attached her signature to it. According to her testimony the first intimation she had that her husband proposed to draft or had drafted his will was in their home on March 4, 1936, when he brought it out and proceeded to read it to her. In the course of his reading he got as far as the paragraph which provided that his own sister was to receive the sum of $100 per month for the balance of her natural life. At that point in his reading his wife interrupted to observe that the amount was inadequate, as his sister had been accustomed to much more in the past. It appears that this observation nettled the husband, and he immediately got up, threw the will upon his chair and stalked from the room. While the wife then, and for several days after, had an opportunity to read the will, as he had left it with her, she did not do so. After the incident mentioned the wife placed the will on her husband's

desk in his den. In the course of a few days he took it and then kept it until on a morning subsequently, when he called his wife into the den, handed her a pen and requested that she sign the will. When she then asked him why it was necessary for her to sign *his will*, he replied: "Edith, I am in a hurry. Sign this will." Thereupon she signed the waiver and election clause upon the blank line provided for her signature, without reading either the will or the clause, and without knowledge of the contents of either and without having had the waiver and election clause read over to her or by her. She testified that she did not know she was making an election with reference to her property rights, and that her husband never explained the provision he was making for her in his will nor the effect of her act. Moreover, she did not have the slightest knowledge of the size of his estate or how much of it was community property. As a matter of fact, the testimony is that for some time prior to his death his monthly allowance to her for the payment of living expenses was in the neighborhood of $100.00. During that period it was her understanding that "he had lost all of his possessions." Actually, when he died his estate inventoried in excess of $500,000.

 In his opening statement on the trial below, counsel for the executors announced that as the action was for cancellation of the "waiver and election" it appeared to him it was unnecessary that any evidence should be introduced showing the nature of the property of which the husband died possessed—that is to say, whether it was community or separate property—and accordingly he sought a stipulation to that effect from counsel for the wife. Counsel for the wife thereupon, in substance, stated that he saw no need for an exact determination as to what property was community and what was separate, if it was understood, for want of evidence on the point, that the presumption would be that the property was community property and hence that the wife, by her waiver and election, had given up one-half of the property without any adequate consideration therefor. Without relating in detail the statements made by respective counsel, we think it is clear from the record that the minds of the respective counsel never met on the stipulation; that counsel for the executors did not appreciate the point made by counsel for the wife, and that the trial judge

was misled by the various statements of counsel into believing that not only would there be no issue as to separate or community property upon which he would have to find, but additionally we think that he understood that he was entitled to class the estate as being separate property rather than community property. As we are of the opinion that the trial court was required to assume that all of the property was community property, and if it in fact was community property that the decision below cannot be upheld, we conclude that the case must be reversed in order that specific evidence may be taken on the question. Our reasons for so holding will be made clear as we proceed.

Initially it needs to be pointed out that the trial court specifically found that when the wife signed the waiver and election she had complete trust and confidence in her husband and in his business ability and legal knowledge, and that she did not know the nature of community or separate property or her rights thereto, nor did she know the extent of her husband's estate. The court additionally found she was not familiar with business practices, customs or usages, and that her husband did not explain to her the nature and extent of her act in signing the waiver and election.

Notwithstanding these findings the court found that the husband did not use any coercion in procuring his wife's signature; that he made no misrepresentations respecting the "waiver and election," and did not exert any undue influence upon her; that she could have sought independent counsel and advice before she signed, and that there was plenty of opportunity on her part to have done so. Additionally the court found that it was not true, as she had averred, that she received no consideration for signing the waiver and election. Upon the findings as made the court drew the conclusion that the waiver was valid and that there was no ground for its cancellation as prayed.

Upon the facts as narrated appellant bases her claim that, as a matter of law, there was undue influence and coercion of a character that should permit her to avoid the waiver and election, thus enabling her to claim her statutory right in the estate.

██ Our statute (Civ. Code, sec. 158) provides that all contract transactions between a husband and wife are sub-

ject to the general rules which control the acts of persons occupying confidential relations with each other, as defined in the title on trusts. In passing upon that statute our Supreme Court, in *White* v. *Warren,* 120 Cal. 322 [49 Pac. 129, 52 Pac. 723], said: "As applied to the relations of husband and wife, the aforesaid section 2235 may be read as follows: 'All transactions between the husband and wife, by which one obtains *any advantage* from the other, are presumed to be entered into by the latter *without consideration and under undue influence.*'" (Italics ours.) The foregoing case lays down the test which we must apply in consideration of the facts of the instant case.

The phrase "any advantage," as used in the statute and in the case cited above, has not been defined by any decision in this state. Yet the same phrase is found in a federal statute; and while it is there used in an altogether different setting, it has been defined by the Supreme Court of the United States in a manner which we think suggests the definition we should likewise give to the phrase as here used. In *Gorin* v. *United States* (Jan. 13, 1941), 312 U. S. 19 [61 Sup. Ct. 429, 85 L. Ed. 488], it was held that under the Espionage Act, making it a crime for a person to obtain information relating to the national defense "to be used . . . to the *advantage* of any foreign nation," the word "advantage" meant *"either to our hurt or another's gain."* (Italics ours.) In short, the Supreme Court held that it was not necessary in a case involving the statute to show that a foreign country had gained an advantage, but it was sufficient to show the "hurt" to the United States. If that definition be here accepted as appropriate, then an advantage may be said to have been derived by the husband in this case if it be shown that there was a "hurt" to the wife.

■ In the instant case we are required to presume, as no evidence was introduced on the point, that the entire estate which passed under the decedent's will was community property. (*Estate of Bryant,* 3 Cal. (2d) 58 [43 Pac. (2d) 529]; *Estate of Jolly,* 196 Cal. 547 [238 Pac. 353].)

■ That being true, it follows that except for the waiver and election the wife would have been entitled to one-half of the estate, or in excess of $250,000. All she gets under the will of her husband, except for a small amount of personal property, is a monthly payment, to be made to

her by the trustees of the will, of $250 for a period of 15 years, and thereafter at the age of 69, if she should live so long, she will be entitled to receive one-third of the then existing estate. In short, if she lives until she attains 69 years of age she will have received over the fifteen years period the sum of $45,000, and she will then be entitled to one-third of the then existing estate. Whether these two items, added together, would amount to as much as $250,000 is of course problematical. But aside from that, she will not receive the interest which the one-half of the estate has earned over the years. Accordingly it is clear that through the waiver and election she will receive a lesser amount, in any view, than she would have received had she not signed it—assuming, of course, that the entire estate is community property, which is the assumption which we must here make. Therefore it is clear that the wife was "hurt"; and likewise it seems clear that except for the mutual promises there was no consideration whatever for the signature, and that the husband received a definite advantage.

██ While the court did find that it was not true that the wife did not receive *any* consideration for her waiver and election, there is no evidence to sustain the finding. Such a finding could be sustained on this record only if there was a presumption that the property was the husband's separate property; but, as we have seen, the presumption is that it was all community property. ██ Moreover, the statute which is here controlling places the burden upon the husband's representatives to show not only that there was some consideration, but an "adequate consideration," for the waiver and election by the wife.

In *Estate of Cover*, 188 Cal. 133 [204 Pac. 583], the wife by a post-nuptial agreement relinquished her right in her husband's estate, valued upon his death at $200,000, for a present consideration, which was paid to her, of $14,000 in cash. In affirming a holding that the consideration was inadequate the court said: " . . . she [the wife] . . . released her expectancy to a substantial portion of a two hundred thousand dollar estate in return for a consideration obviously inadequate; . . . the agreement was drafted at the direction of the deceased and executed by the widow at his instigation 'in respect for the wishes' of the deceased, without any disclosure by him to her of the then value and char-

acter of his estate or of the rights which she was called upon to surrender by the agreement . . . Accepting the agreement in the belief that the deceased was dealing honestly with her, she was justified in resting in that belief, and was not called upon then or thereafter to make independent inquiry as to his good faith.'' The following later cases cite the rule stated in the Cover case, *supra: Locke Paddon* v. *Locke Paddon,* 194 Cal. 73 [227 Pac. 715] (1924); *Bryson* v. *Byrer,* 87 Cal. App. 320 [262 Pac. 461] (1927)—wherein the court states that it was the duty of the defendant to overcome the statutory presumption of lack of sufficient consideration and the exercise of undue influence; *Dale* v. *Dale,* 87 Cal. App. 359 [262 Pac. 339] (1927); *Smith* v. *Lombard,* 201 Cal. 518 [258 Pac. 55] (1927); *Donze* v. *Donze,* 88 Cal. App. 769 [264 Pac. 294] (1928); *Brown* v. *Canadian Industrial Alcohol Co., Ltd.,* 209 Cal. 596 [289 Pac. 613] (1930).

Accordingly, as we are of the view that the judgment cannot stand because no adequate consideration for the waiver and election is shown, we need not stop to discuss the other contentions urged by appellant.

Judgment reversed.

McComb, J., concurred.

WOOD (W. J.), J., Dissenting.—I dissent. In my opinion the evidence is sufficient to sustain the findings of the trial court. In *Estate of Cover,* cited in the majority opinion, the trial court found that the agreement between the husband and the wife was brought about by undue influence, and the reviewing court held that the evidence was sufficient to sustain the findings. In the case now before us the findings are in favor of respondents.

A petition for a rehearing was denied January 22, 1942. Wood (W. J.), Acting P. J., voted for a rehearing.

Respondents' petition for a hearing by the Supreme Court was denied February 19, 1942. Shenk, J., and Edmonds, J., voted for a hearing.