[Civ. No. 18975. First Dist., Div. Two. Nov. 21, 1960.]

NAN HELEN COONS et al., as Coexecutrices, etc., Respondents, v. DONALD J. HENRY et al., Appellants.

Raymond D. Williamson and Herbert J. Williamson for Appellants.

Kenneth L. Johnson for Respondents.

KAUFMAN, P. J.—This is an appeal from a judgment in favor of the respondent, Mathilda M. Henry, cancelling and

setting aside a purported property settlement agreement. Mathilda M. Henry filed this action to cancel and set aside a purported property settlement agreement between herself and her deceased husband, Ziba L. Henry. Mathilda survived her husband, but died pending this appeal, and the matter is continued in the names of the executrices of the will of Mathilda M. Henry. The appellants are the executors of the estate of Ziba L. Henry and the other heirs at law of Ziba L. Henry.

The basic facts are not in dispute. Ziba L. Henry and Mathilda M. Henry were married on December 4, 1929, and lived as husband and wife until October 16, 1955, when Ziba L. Henry died. By his will, dated April 11, 1955, Ziba L. Henry bequeathed his estate, valued at $43,177.83 in five equal parts to his widow and his four adult children by a prior marriage.

On April 13, 1955, Ziba L. Henry and the respondent executed a written agreement to the effect that in consideration of two annuity contracts which he obtained for her, she waived her community property rights to all property considered community property of the parties. The two annuity contracts referred to in the agreement were: (1) a Manhattan Life Insurance Company of New York contract, dated June 25, 1953, purchased for $19,395.60, made payable to Mathilda M. Henry, at the rate of $99.60 per month during her life, and (2) a New England Mutual Life Insurance Company contract dated July 29, 1953, purchased for $7,259.58, made payable to Mathilda M. Henry, at the rate of $61.13 per month during her life. Both of these contracts were contracts between the insurance companies and the wife, and beyond any power of change or revocation by the husband.

The trial court found the facts as stated above and found that the annuity contracts were already the separate property of the wife at the time of the agreement of April 13, 1955, so that they could not constitute consideration for that agreement; that, therefore, the agreement of April 13, 1955, was obtained by undue influence and that the husband gained an advantage.

The court further found that whatever separate property Ziba L. Henry may have owned at the time of his marriage became so commingled with community earnings and other community property that it was impossible to trace the original separate property or to identify any of the property of the estate as the separate property of the decedent; that all of

the property bequeathed by the will constituted the community property of the parties; and that Ziba L. Henry did not own or possess any separate property at the time of his death; and that there was no intention manifested by the will that the testamentary bequest to Mathilda was made in lieu of her community property interests. Accordingly, the court decreed that Mathilda M. Henry was entitled to one-half of the community property and a one-fifth interest in the remainder as a bequest under the terms of the will.

On appeal, it is argued that: (1) the evidence does not support the findings as to lack of consideration and undue influence, etc.; (2) the court erred in not construing the two insurance policies, the will and the property settlement agreement as one contract; (3) that the court erred in its determination that all of the property disposed of by the will of Ziba L. Henry constituted community property of the parties, and in refusing to admit into evidence certain declarations of Ziba L. Henry that certain property constituted separate property; and (4) the court's decision is beyond the prayer of the complaint and invades the jurisdiction of the probate court.

As to the first contention raised on appeal, there is ample evidence to sustain the findings of lack of consideration and undue influence. The uncontroverted evidence indicates that the two annuity contracts were purchased in 1953, two years before the purported property settlement agreement; that the premium for the New England annuity contract was obtained by cashing an earlier insurance policy on Ziba's life dated 1934, and made payable to Mathilda as beneficiary; that both of the annuity contracts were contracts between the companies and Mathilda, effective immediately, and beyond any power of change or revocation in the husband.

It is the general rule that insurance paid for out of community funds is the community property of the parties (see 10 Cal.Jur.2d, § 28, p. 695, and cases there cited.) It has been held, however, that when the husband names the wife as beneficiary, the policy is presumptively a gift to her, and as such her separate property, provided the essentials of a gift are present. Thus, it appears that the purported consideration for the promise of Mathilda in the property settlement agreement of April 13, 1955, already constituted her separate property at the time of the agreement. They could not, therefore, constitute the consideration for the agreement. (See *In re Dobbel,* 104 Cal. 432 [38 P. 87, 43 Am.St.Rep.

123]; *Mutual Life Ins. Co.* v. *Frank,* 9 Cal.App.2d 528 [50 P.2d 480].)

The record also indicates that after his retirement in 1943, Ziba L. Henry handled all of the financial affairs of the couple and paid all of the bills. Mathilda M. Henry testified that she trusted her husband completely and always signed anything he told her to; that when she signed the property settlement agreement, no one else was present and she did not know what she was signing and did not read the document and that she had no knowledge of the agreement until after her husband's death.

There can be no question that Ziba obtained an advantage over Mathilda by the agreement, as she relinquished her community interest in any property which then constituted the community property of the parties, and that she deprived herself of her vested right to one-half of any thereof. She also deprived herself of the opportunity to make an election between any such community interest and any will by which the husband sought to dispose of it otherwise than to her.

Contract transactions between husband and wife, by which one obtains any advantage over the other, are presumed to be entered into by the latter without consideration and under undue influence. (Civ. Code, § 158; *Gaines* v. *California Trust Co.,* 48 Cal.App.2d 709, 714 [121 P.2d 28].)

When a husband secures a property advantage from his wife, the burden is cast upon him to show that there has been no undue influence and whether or not the spouse gaining such an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence. (*Weil* v. *Weil,* 37 Cal.2d 770, 788 [236 P.2d 159].)

Appellants next rely on section 1642 of the Civil Code to argue that there is adequate consideration if the agreement of April 13, 1955, the will of April 11, 1955, and the two annuity contracts executed in 1953, are to be taken as one complete document. The general rule under the code section, however, is that two or more separately executed instruments may be considered and construed as one contract "only when upon their face they deal with the same subject matter and are by reference to one another so connected that they may be fairly said to be interdependent." (*Merkeley* v. *Fisk,* 179 Cal. 748, 754 [178 P. 945]; see also *Reid* v. *Johnson,* 85 Cal.App.2d 112, 115-116 [192 P.2d 106].) As indicated above, each of the four documents here involved were

executed separately and at different times; the purported property settlement agreement was executed after the will. The two annuity contracts are independent and complete transactions. The will makes no reference to the annuity contracts and does not indicate that the testator intended that Mathilda make an election between the will and her community right to one-half of the estate. Furthermore, at the time of the execution of the will dated April 11, 1955, the property agreement dated April 13, 1955, by which she purported to waive her community interest, was not yet in existence. Under these circumstances, the trial court properly concluded that the instruments were not to be construed as one complete document.

The next argument is that the trial court erred in its findings that all of the property disposed of by the will of Ziba L. Henry constituted community property of the parties. There is a disputable presumption that all of the property disposed of by the will of the husband constituted the community property of the parties. (*Gaines* v. *California Trust Co., supra.*) Appellants argue that in the instant case, there was sufficient evidence to rebut the presumption but the trial court erroneously excluded it. For the purpose of proving that a substantial amount of the property disposed of by Ziba constituted, not community, but separate property of the husband, the appellants offered in evidence certain declarations, oral or in writing, claimed to have been made by the husband during his lifetime. These were properly excluded by the trial court as such obviously self-serving hearsay declarations are not admissible against the wife in the absence of some showing that she assented to them in some way, or that they were part of the res gestae of the transactions between the husband and wife. (19 Cal.Jur. 2d, Evidence, § 441, p. 195.)

There is, however, other evidence in the record upon which appellants rely to establish the property of the estate as the separate property of Ziba. However, the court found that whatever separate property the decedent may have owned at the time of his marriage, such property became so commingled with the community earnings and other community property of the parties that it is impossible to trace the original separate property or to identify any of the property of the estate as separate property of the decedent. There was no error in this finding as the rule is, where separate property is commingled with community property, so that its character

cannot be traced, the presumption in favor of the community must remain. (*Estate of Woods,* 23 Cal.App.2d 187 [72 P.2d 258].)

The final argument is that several of the trial court's findings go beyond the prayer of the amended complaint and invade the jurisdiction of the probate court.

"... It is a cardinal rule of equity practice that under a prayer for general relief the court may grant any relief conformable to the case made by the pleadings and the evidence, although it may not be the relief asked by a special prayer. This rule is based upon the fundamental principle of chancery that a court of equity will endeavor to finally dispose of litigation so as to preclude further litigation between the same parties and upon the same subject matter. (19 Am.Jur. 281, 282.)      It is also an accepted rule that when a party comes into a court of equity pleading facts which entitle him to some equitable relief, the court will assume jurisdiction of the entire controversy, notwithstanding the form of the pleading, and will disregard the specific prayers in order to grant the relief which the proof warrants as within the equities of the entire case. (*Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84].)" (*Sonnicksen* v. *Sonnicksen,* 45 Cal.App.2d 46 at p. 52 [113 P.2d 495].)

The prayer of the first amended complaint on which the action was tried, asked for: (1) the cancellation of the agreement (2) that the wife be declared to have at least a 60 per cent beneficial interest in the property inventoried in the estate of the deceased husband and the two annuity contracts (3) that the wife be decreed the owner of said property (4) for costs and (5) for general relief. The trial court was, therefore, authorized to determine what constituted the community property at the death of the husband. Furthermore, appellants participated in the trial of this issue, without objecting to the jurisdiction of the court, and are foreclosed from raising this issue for the first time on appeal. (*Schlyen* v. *Schlyen,* 43 Cal.2d 361, 377 [273 P.2d 897]; also *cf. Gaines* v. *California Trust Co.,* 48 Cal.App.2d 709 [121 P.2d 28], a similar equitable proceeding wherein the court made findings as to the status of the property of the parties.)

In view of the foregoing, the judgment must be and is hereby affirmed.

Draper, J., and Shoemaker, J., concurred.