[Civ. No. 35399. Second Dist., Div. Five. Sept. 21, 1970.]

Estate of MARTIN H. MADER, Deceased.
MARTHA M. MADER, Petitioner and Appellant, v.
ILSE G. MADER, Individually and as Co-executrix, etc.,
Defendant and Respondent;
RUTH MADER HALL, Objector and Appellant.

## COUNSEL

Devor & Mullin, George I. Devor and Abe Mutchnik for Petitioner and Appellant.

William Herbert Hall for Objector and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**STEPHENS, J.**—This is an appeal and cross-appeal from the judgment and decree entered after hearing on a petition to determine heirship.

The facts are that as of February 1, 1963, Martin and Martha Mader had been married for over 30 years, and remained husband and wife until Martin's death on March 16, 1967. The issue of this marriage were three daughters: Ruth, who married William H. Hall; Ilse, who has remained unmarried; and Gerda, who is an unmarried, incompetent person requiring a guardian and special care. The assets of Martin and Martha were adequate to provide for Gerda's requirements. All of the assets here involved were community property as of the time of Martin's death, and were inventoried at a total value of $854,601.62.[1] At all times during the marriage, Martha placed complete confidence and trust in Martin and relied upon him to provide for her benefit; she was a housewife, uneducated in business matters. On February 1, 1963, at Martin's direction, David W. Slavitt, attorney, had prepared the will of Martin, a will for Martha, and an "Election and Waiver on the Part of the Wife" (attached to Martin's will), and took these documents to Martin's place of business. At Martin's direction, Ilse, who was an employee in Martin's business, telephoned Martha and requested that she come to the office, which she did. There, Martha met Slavitt for the first time and was presented with both her will and the election document for her execution. There had

---

[1] Appellant Hall asserts that the assets total less than one-half this amount. Creditors' claims totaling $31,532.44 were duly filed and paid.

been no communication between Martha and Slavitt relative to the documents prior to this first meeting. Slavitt sought to read a portion of the documents to Martha, but stopped because he saw she was not interested or did not understand. Martha signed the documents, as requested by Martin, after Martin's assurance that they were for her benefit. The whole transaction took but a few minutes. Though there is evidence to the contrary, the court's findings support the conclusion that Martha did not know or understand the meaning of the documents and was not "represented" by attorney Slavitt at the time. The court found on these facts that the election[2] was voidable by Martha.

Since it is the construction of the will which controls the issues here, it is necessary to set forth in full the pertinent provisions of Martin's will:

"THIRD: It is my intention by this Will to dispose of my entire separate estate, if any there be at the time of my demise, and the entire community property of my wife and myself, including specifically my wife's interest therein, but not to exercise any power of appointment held by me. If my wife, MARTHA, prior to probate of this Will, shall not have elected whether to take under this Will or the rights given her by law, she shall in due course make such election. I recommend to my wife, MARTHA, that she accept, in lieu of her community property right, the benefits given her herein, and if she does so accept, the entire community estate shall be disposed of under this Will. Should my wife elect to take such rights as are given her by law, rather than to take under this Will, then the provisions of this Will shall, nevertheless, be carried into effect as to all property remaining subject to disposition under this Will. . . .

"FOURTH: I give, devise and bequeath to my wife, MARTHA, in fee

---

[2]"ELECTION AND WAIVER ON THE PART OF THE WIFE

"I, MARTHA M. MADER, wife of MARTIN H. MADER, hereby certify that I have read the foregoing Will of my husband and fully understand that he disposes of all of his separate estate and his and my interests in the entire community property estate. Being fully satisfied with its provisions, I hereby elect to accept and acquiesce in the provisions of the Will, waiving all claims to my community property share given me by virtue of the laws of the State of California, that I may have in any real property or personal property disposed of by the foregoing Will of my said husband, except that I do not waive any right to family allowance out of my husband's estate during probate. This instrument is not a transfer or release of my right, title or estate in any property now owned or hereafter acquired by me, is revocable by written instrument executed by me and delivered to my husband during his lifetime, and shall be effective and valid for any purpose only after the decease of my husband and provided I survive him, and upon condition that the foregoing Will shall be duly admitted to probate by a court of competent jurisdiction and that it shall not be successfully contested or probate revoked.

"Dated Los Angeles this ———— day of ———————— 1963.

[s] Martha M. Mader

MARTHA M. MADER"

simple, the buildings and land which comprise our residence at the time of my death. I also give all of my pleasure automobiles, jewelry, silverware, books, pictures, paintings, works of art, household furniture and furnishings, clothing and other personal effects to my wife, MARTHA."

"SIXTH: I give, devise and bequeath the residue of my estate, which as hereinabove stated, includes my interest and my wife's interest in our community property, real and personal, wherever situated, including all failed and lapsed gifts, hereinafter sometimes termed as the "residue," be divided into two parts and distributed as hereinafter provided.

"I direct that my estate be divided into two parts upon the terms and conditions hereinafter provided. For the purpose of such division, the residue of my estate shall be considered as undiminished by estate, inheritance or succession taxes paid or to be paid. . . ."

"If my wife, MARTHA, shall be living at the time of my death, one part of the estate residue, hereinafter sometimes referred to as the "Trust," shall be set aside in Trust for the sole benefit of my wife, and said part shall consist of cash or property in an amount equal to the sum of (a) the aggregate value of my wife's share of our community property subject to probate administration, less (b) my community property interest in property passing to my wife outside of probate but as a result of or incident to my death, and less (c) my community property interest in property bequeathed and devised to my wife under the provisions of Article FOURTH hereof, to the extent she shall take under said Article. The aggregate value of my wife's share of our community property she shall take under said Article. The aggregate value of my wife's share of our community property subject to probate administration shall be an amount equal to (i) one-half of the entire value of all such property finally determined for federal estate tax purposes, less (ii) one-half of such part of all debts, encumbrances, last illness and burial expenses, family allowance, and expenses of administration, as is properly chargeable in probate against the entire community property subject to probate administration. . . ."

". . . If my wife shall predecease me, no part of the trust estate shall be set aside for her sole benefit, but instead the part of the trust estate hereinbefore directed to be set aside for her sole benefit shall augment the second part of the residue of my estate set aside for the benefit of my issue."

"A. DISTRIBUTION OF INCOME AND PRINCIPAL

"(1) The net income of the Trust set aside for my wife shall be distributed in monthly or other convenient installments to or for the benefit

of my wife, MARTHA, during her life. If the net income of the Trust for any calendar year during my wife's lifetime (beginning with the calendar year in which any decree of distribution shall have been entered establishing these trusts), shall be less than . . . $24,000.00), the Trustees shall distribute to my wife out of principal of the Trust an amount equal to the difference between said sum of . . . $24,000.00) and the net income of the Trust for such year. In addition, if the net income of the Trust, or the sum of . . . $24,000.00) payable out of the net income and principal of the Trust as aforesaid, whichever is the greater, shall be insufficient in the sole discretion of my Trustees for the purpose of enabling my wife to contribute to the care, comfort, support, maintenance, and education (including education at and above the college level) of my children in such amounts and proportions as she shall choose, the Trustees shall invade the principal of the Trust for such purposes.

"(2) If my wife shall survive me, she shall have the power to appoint, by Will or Codicil thereto, all or any part of the principal and undistributed income of the Trust, free of the trust, in favor of such of my children or their children as shall be alive at the date of her death. . . ."

"(4) The Executors shall divide the principal of second part of the residue, (hereinafter sometimes termed 'the remaining estate'), into equal shares as follows: one share for each then living child, and one share for the then living lawful issue of each deceased child of mine, upon the principle of representation. . . ."

"(5) The Executors shall distribute to my daughter, RUTH E. HALL, and my daughter, ILSE G. MADER, their shares to them outright in fee simple. The Executors shall distribute the share of GERDA G. MADER to the Trustees, and the Trustees shall distribute to, or use for the benefit of GERDA G. MADER, in quarterly or other convenient installments, so much of the net income derived from her Trust as in the sole discretion of the Trustees may be required for her proper support, medical attention, hospitalization, private institution costs, maintenance, comfort and education. Any income not so distributed or used shall be added to the principal of each of said shares of said Trust. The share of my daughter, GERDA, shall be retained in trust for her benefit during her lifetime with distribution of income as provided in this subparagraph, or distribution as provided in subparagraph (12) hereunder to be made to her or for her benefit."

"(12) If, notwithstanding the provisions of subparagraph (1) of this Part A, the payments to which my wife is entitled shall be insufficient in the sole discretion of the Trustees to provide for her reasonable support, care, comfort and maintenance, and if the payments to which any other

beneficiary of the trust or trusts created hereunder is entitled shall be insufficient in the sole discretion of the Trustees to provide for her reasonable support, care, medical attention, hospitalization, private institution costs, comfort and maintenance, the Trustees may pay to such beneficiary or apply for his or her benefit so much of the principal of such beneficiary's trust as to the Trustees may seem proper or necessary for that purpose, but such payments shall not exceed the principal set aside for the benefit of such person, and shall be deducted from it. . . ."

The court stated that "[t]he disposition of the community property under the Will was less advantageous to MARTHA M. MADER than the rights she would enjoy if she took her interest in the community property free of the Will." He also construed the will and determined as follows:

"3. A. The ELECTION AND WAIVER ON THE PART OF THE WIFE, dated February 1, 1963, executed by MARTHA M. MADER is not binding upon MARTHA M. MADER and is voidable by her at her election.

"B. Martha M. Mader has the right to elect: (i) To take her interest in the community property free of the Will of Martin H. Mader and according to law or (ii) To take the devises, legacies, bequests and benefits given to her under the Will of Martin H. Mader.

"C. If Martha M. Mader elects to take her interest in the community property free of the Will of Martin H. Mader and according to law as set forth in paragraph 3B(ii) above then: (i) Martha M. Mader shall not take the benefits given to her under the Will of Martin H. Mader and shall not therefore receive distribution of the buildings and land which comprise the residence of Martha M. Mader and the deceased nor the pleasure automobiles, jewelry, silverware, books, pictures, paintings, works of art, household furniture and furnishings, clothing and other personal effects as set forth in Article Fourth of the Will of Martin H. Mader; nor shall Martha M. Mader receive distribution of any separate property of Martin H. Mader under Article Fifth of his Will in the event such separate property shall be found to exist, the court herein having concluded that all property now known and in the estate is community property. (ii) The part of the residue of the estate set aside for the benefit of Martha M. Mader shall augment the second part of the residue set aside for the benefit of the issue of Martin H. Mader.

"D. (i) The Statement of Claim filed herein by Martha M. Mader was a request for a declaration of her rights and was not a petition, request or demand by Martha M. Mader contrary to the provisions of Article Seventh of the Will of Martin H. Mader.

(ii) The Petition for Family Allowance filed by Martha M. Mader was

pursuant to a right granted her by law and not contrary to the provisions of Article Seventh of the Will of Martin H. Mader.

"4. The Co-Executors shall distribute the estate as follows: A. If Martha M. Mader elects to take under the Will of Martin H. Mader, there shall be distributed to Martha M. Mader the items referred to above in Article Fourth of the Will and any separate property which may hereinafter be discovered under Article Fifth of the Will of Martin H. Mader.

"B. If Martha M. Mader elects to take under the Will of Martin H. Mader there shall be distributed to the Bank of America National Trust and Savings Association and Ilse G. Mader as co-trustees for the sole benefit of Martha M. Mader so much of the residue of the estate which shall consist of cash or property in an amount equal to the sum of (a) the aggregate value of Martha M. Mader's share of the community property of her and the decedent subject to probate administration less (b) Martin H. Mader's community property interest in property passing to Martha M. Mader outside of probate but as a result of or incident to Martin H. Mader's death and less (c) Martin H. Mader's community property interest in property bequeathed and devised to Martha M. Mader under the provisions of Article Fourth of the Will, to the extent that she shall take under said Article; and subject, further, to the balance of the provisions of Article Sixth, said amount shall be determined at a later time upon final distribution of the estate.

"C. The balance of the residue of the estate if Martha M. Mader elects to take under the Will of Martin H. Mader, or the entire residue of the estate if Martha M. Mader elects to take her interest in the community property free of the Will of Martin H. Mader shall be distributed one-third . . . to Ruth Mader Hall in fee simple, one-third . . . to Ilse G. Mader in fee simple, and one-third . . . to Bank of America National Trust and Savings Association and Ilse G. Mader as Trustees for the benefit of Ilse G. Mader as guardian of the estate of Gerda G. Mader, an incompetent person, which guardianship is pursuant to the appointment of Ilse G. Mader as guardian in Los Angeles Superior Court Case No. 526 490.

"D. The powers and duties of the trustees named above shall be those powers and duties specified in the Will of Martin H. Mader and which shall be set forth in the decree of final distribution."

■ No evidence outside the document itself was adduced; hence, this court is free to make its independent determination in construing the will. (*Estate of Russell,* 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353].)

The case of *Gaines* v. *California Trust Co.,* 48 Cal.App.2d 709 [121 P.2d 28] is authority for the principle that where a husband obtains an

advantage in a transaction between a husband and his wife, there is presumed to be inadequacy of consideration and undue influence. Here, the entire estate consists of community property; if Martha is to take only under the will, she will obviously receive less than she would receive by way of her community property rights. ■ As stated in *Weil* v. *Weil*, 37 Cal.2d 770 at p. 788 [236 P.2d 159]: "It is true, as defendant contends, that when a husband secures a property advantage from his wife, the burden is cast upon him to show there has been no undue influence. [Citations.] It is also true . . . that whether or not the spouse gaining such an advantage has overcome the presumption of undue influence is a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence. [Citations.]"[3]

■ Martha contends that the trial court erred in determining that she cannot take both *against* the will and *under* the will. She urges that the will expressly provides that she may elect to take her community property share and also receive the devises and bequests made to her in the will. In support of this contention, she relies upon the words contained in paragraph THIRD: "Should my wife elect to take such rights as are given her by law rather than to take under this Will, then the provisions of this Will shall, nevertheless, be carried into effect as to all property remaining subject to disposition under this Will. . . ."

■ Before determining the effect of the above quoted portion of the will, it is axiomatic that the function of the court in construing a will is to ascertain the testator's intention as expressed, and to give it effect if it is lawful. To accomplish this purpose, the will must be considered as a whole and effect given to each expression therein. ■ Another basic principle which is applicable is that where the intention to dispose of the whole of the community property and not only of a moiety thereof is clearly shown, the surviving spouse must elect to take under or against the will if not to do so and to take in both respects would defeat the plain intent of the testator. (*Estate of Vogt*, 154 Cal. 508 [98 P. 265].) ■ In the instant case there can be no question but that Martin sought to dispose of the whole of the community property. In fact, all of the assets of the parties

---

[3]In California Will Drafting (Cont. Ed. Bar 1965), § 8:29, it states: "It should be borne in mind, however, that [the will and waiver taken together is] subject to the rules governing transactions between persons occupying a confidential relationship. If the value of the wife's benefits under the will is less than the value of her interest in the community property, it will be presumed that she made her election under undue influence and she may repudiate it after the husband's death. *Gaines* v. *California Trust Co.* (1941) 48 Cal.App.2d 709 [121 P.2d 28]. Even if the value of the wife's benefits under the will equals or exceeds the value of her community interest, it is still possible that she may be able to repudiate her election if she can establish that she did not know the extent of the community property or the legal consequences of her election at the time she made it. See C.C. § 2230."

were of that class. So, what was the intention of Martin when he not only sought to dispose of all of the community property by his will yet provided that if his spouse "should . . . elect to take such rights as are given her by law rather than to take under this Will, then the provisions of this Will shall, nevertheless, be carried into effect as to all property remaining subject to disposition under this Will. . . ."?

We have only Martin's will and the election before us. Whether Martin had Slavitt prepare a will for Martha which when effective would have accomplished the same purpose as his will sought to accomplish (by bequest of her interests solely to Martin, or in part to a trust similar in purpose to that of Martin's will),[4] we do not know, nor are we permitted to speculate thereon. It is clear that Martin sought, in at least two ways to control the ultimate disposition of all the community property through his will. The first way, of course, was to recommend[5] that Martha make an election to take in accordance with the will, prior to its probate, or in due course of probate. The second was to have her execute the election at the time he executed his will. The will is couched in language connoting a desired future happening, rather than recognizing the contemporaneous event of the execution of the election. It appears to us that this strongly suggests Slavitt's and/or Martin's disbelief as to the effectiveness of the election itself.

One simple answer to the problem created by the obscure language of paragraph THIRD is this: If it was Martin's intention that Martha was to take both against and under the will, for what conceivable reason would he recommend one alternative "in lieu of" the other? Why would he have presented her with the written election when what he really wanted was that she could exercise her community property rights as well as those granted by the will? The fact of the matter is that Martin desired the exact opposite. A careful analysis of the will proves that Martin intended to leave Martha little or nothing.

Assuming the will was to be applied as to all of the community property belonging to Martin and Martha, the only bequests to Martha which she would receive and thereafter to which she would have the unlimited right of disposition would be "the buildings and land which comprise our residence at the time of [Martin's] death, . . . all of [Martin's] pleasure automobiles, jewelry, silverware, books, pictures, paintings, works of art, household furniture and furnishings, clothing and other personal effects." Then he placed in a trust Martha's one-half of the community property,

---

[4] (Paragraph A (2).)

[5] "I recommend to my wife, MARTHA, that she accept, in lieu of her community property right, the benefits given herein . . ." (Par. THIRD.)

less Martin's community property interest in property passing to Martha outside of probate (resulting from his death) ($90,000 insurance), less his community property interest in any specific bequest to Martha (one-half of the value of the home, furniture, furnishings, and personal effects, i.e., approximately $27,500), less one-half of all debts, encumbrances, last illness and burial expenses ($31,532.44, less one-half of all family allowances (a total of $72,000 has been allowed by court order), less expenses of administration (not yet subject to ascertainment).[6] All of the rest (the other one-half of the community augmented by the amounts deductible from the "Martha trust" share) he directed to be divided into three equal portions for distribution, in fee or trust as the case might be, to his children. He made provision also that as of the time of Martha's death, the assets remaining in her trust would augment the children's portions. The provision for payment from the Martha trust to Martha was related to the net income from that trust. True, there was a right of invasion in case of need, as well as a directive to pay not less than $24,000 per year whether or not the income met that figure. This trust was also burdened by its obligation for the "care, comfort, support, maintenance, and education (including education at and above the college level) of [his] children in such amounts and proportions as [Martha] shall choose, [and] the trustees shall invade the principal of the trust for such purposes." Nowhere, however, was there the right of invasion of the children's portions to answer any possible need of Martha.[7]

Martin was thoughtful enough to give Martha the "power to appoint, by Will or Codicil thereto, all or any part of the principal and undistributed income of the Trust, free of the trust, in favor of such of [his] children or their children as shall be alive at the date of [Martha's] death."

Thus, the intent of Martin is clearly shown. He intended to leave all of the community assets except the house and certain incidental belongings and furnishings and whatever was required for the maintenance of Martha (but not to exceed her community share in any event) for distribution to his children, either under the direction of his will, or by his will and the limited power of appointment reserved to Martha, unless the words "then the provisions of this will shall, nevertheless, be carried into effect as to all property remaining subject to disposition under this Will" evidence an alternative intent in the case Martha elects to take against the will. They give rise to no alternative expression of intent.

If Martha takes under provisions of law, she takes one-half of the

[6]We deem it unnecessary to set forth a monetary comparison showing what Martha would receive by taking against the will as opposed to taking under it.

[7]Paragraph A(12) actually provides to the contrary.

specific items left to her in paragraph FOURTH. That is the same as that which would have been devised to her under the will, for the value of the other one-half thereof reduced the Martha trust to that extent,[8] and since it may be presumed that attorney Slavitt knew that through probate homestead Martha could have the residence set aside in fee to herself, Martin actually bequeathed to her—over that which the law would provide her —nothing but his share in his incidentals listed in that paragraph. And when Martha elects, if she does, to take against the will, what property is there "remaining subject to disposition under this Will" apart from the personalty listed in paragraph FOURTH?[9] It amounts to only the balance of the community property devisable by Martin as provided by law. As to that, he placed it in trust for distribution to his children. And just what did Martin bequeath to Martha under paragraph FOURTH? The result of Martha's choosing to take under the will would, in effect, result in her purchasing Martin's community property interest even in those items he purportedly "bequeath[ed]" to Martha under that paragraph. We therefore conclude that the purpose and intent of that which is urged as a savings clause of sorts was merely to frame the will in fool's gold.

We conclude, just as did the trial court, that Martha must elect to take under or against the will, but she may not take in *both* ways, for to do so would defeat the right of Martin to devise his share of the community property in the manner he sought.

The judgment is affirmed. Each party to bear own costs.

Kaus, P. J., and Reppy, J., concurred.

---

[8]Thorough analysis of the will provisions compels the conclusion that if Martha accepted the bequest under paragraph FOURTH, she would actually be purchasing Martin's community interest therein by virtue of the reduction of her trust share by that amount.

[9]The inventory indicates the total value of these items to be $4,500.